**In re Sandra Jean WILLETT, dba Sandy Willett & Associates, Debtor.**

**FIRST CHICAGO FCC NATIONAL BANK, a National Association, Plaintiff,**

v.

**Sandy WILLETT, Defendant.**

**All Related Actions.**

**Adv. No. 89–90585–H7.**
**Bankruptcy No. 89–06637–H7.**

United States Bankruptcy Court, S.D. California.

March 27, 1991.

John D. Rittenhouse, Karp & Richardson, San Diego, Cal., for debtor/defendant.

Carla R. McBeath, Ferns & Ferns, Glendale, Cal., for plaintiff.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is whether debtor is entitled to recover attorney's fees and costs pursuant to 11 U.S.C. § 523(d) where creditor voluntarily dismisses its complaint to determine dischargeability.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (I).

## FACTS

Debtor/defendant Sandra Jean Willett ("debtor") filed her petition for relief under Chapter 7 of the Bankruptcy Code on August 28, 1989. The § 341(a) first meeting of creditors was set for October 5, 1989, and the last date to file a complaint to determine dischargeability of a debt pursuant to 11 U.S.C. § 523 was December 4, 1989.

Debtor had a credit account with plaintiff First Chicago FCC National Bank ("First Chicago") since 1985. When the account was first opened, debtor's credit limit was $2,500. Due to debtor's good payment history, the credit limit had been extended to over $6,000 just prior to her Chapter 7 filing. Debtor testified that she had con-

sistently paid off balances owed, at one time paying off a balance of approximately $3,000.

In March 1989, debtor purchased several items of furniture using her First Chicago charge card. The charges totalled $6,832.24. The furniture items were purchased by debtor for her own personal household use. Debtor testified that at the time she incurred the debt she was working, had the means to pay the debt, and fully intended to pay the debt. In fact, debtor continued to pay on her account after the purchases were made, making a payment of $300 in April 1989 and a payment of $200 in May 1989. Both payments were in excess of the minimum monthly payment of $138 required by First Chicago.

In July 1989, debtor unexpectedly developed health problems and was unable to work. Having no medical insurance, debtor was unable to pay her creditors and, consequently filed her Chapter 7 petition.

On September 22, 1989, First Chicago sent a letter to debtor's bankruptcy counsel indicating that it believed it had a claim for relief under 11 U.S.C. § 523 and that it would immediately file an adversary proceeding to determine dischargeability of its debt if a mutually agreeable settlement could not be reached by October 23, 1989. Neither debtor nor her counsel responded to this letter.

Counsel for First Chicago admits that no one appeared on behalf of First Chicago at debtor's § 341(a) meeting held on October 5, 1989, in order to examine debtor.

In late November 1989, First Chicago authorized the law firm of Ferns & Ferns to file suit against debtor to determine the dischargeability of the consumer debt. Ferns & Ferns received the file from First Chicago approximately a week before the filing deadline. On November 28, 1989, First Chicago, through its counsel, filed a complaint to determine nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) alleging that debtor obtained credit by false pretenses and fraud. The only factual allegations contained in the complaint were that debtor used the credit card to charge purchases in the approximate amount of

$6,800; that seven months prior to the purchases, debtor had maintained a zero balance; and that debtor had exceeded her credit limit without written authorization from First Chicago. From these facts, First Chicago apparently concluded that debtor incurred the charges without intention of paying therefor, and that debtor made the purchases in contemplation of the filing or knowing that she was insolvent and lacked the ability to pay.

After the initiation of discovery, on October 15, 1990, a stipulation for dismissal and order thereon was entered by this court. Pursuant to this stipulation, First Chicago dismissed the complaint and allowed debtor 30 days to file a motion for attorney's fees under § 523(d). Plaintiff's counsel stated at the hearing held before this court on January 23, 1991, that First Chicago decided to dismiss this action because it became very difficult to determine whether it could establish by clear and convincing evidence that the debtor knew she would not be able to pay the money back at the time she incurred the charges. More significantly, First Chicago's counsel stated that it could not discover any clear objective facts which would make it likely that plaintiff would prevail at trial *under any standard of proof.*

On November 14, 1990, debtor filed her motion for attorney's fees and costs in the amount of $5,686.50 and $21.50 respectively, alleging that First Chicago filed its complaint without substantial justification.

## DISCUSSION

11 U.S.C. § 523(d) provides that:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

This section was enacted in 1978 to protect the honest consumer debtor who, afraid of incurring attorney's fees, would settle quickly with an aggressive creditor who filed a non-dischargeability action. *In re Kullgren,* 109 B.R. 949 (Bankr.C.D.Cal. 1990); H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin. News 1978, 5787.

Section 523(d) was modified by the 1984 Amendments to the Bankruptcy Code to create a "substantially justified" standard in awarding attorney's fees to the debtor which gave the court more discretion in granting or denying a request for fees and costs. Prior to the 1984 Amendments, § 523(d) required an award of fees and costs unless the creditor could show that the award would be clearly inequitable. *Kullgren,* 109 B.R. at 953.

To obtain an award of attorney's fees, a prevailing debtor must request a fee award and allege that the creditor was not substantially justified in challenging the dischargeability of the debt. To avoid a fee award, the creditor must show that its complaint had a reasonable basis in both law and in fact. The requirement that the creditor must show that it was substantially justified to avoid a fee award is necessary because it is far easier for the creditor to demonstrate reasonableness of its action than it is for the debtor to marshal the facts to prove that the creditor was unreasonable. S.Rep. No. 65, 98th Cong., 1st Sess. 58–59 (1983).

█ As stated in a similar case by my colleague to the north, the Honorable John E. Ryan, the test which must be applied in determining whether to award fees is "whether under all the circumstances at the time of filing of the complaint the plaintiff was substantially justified in filing the complaint and if not, are there any special circumstances that would make a § 523(d) award unjust." *Kullgren,* 109 B.R. at 953.

█ I also concur with Judge Ryan that a judgment is not required as a condition to a § 523(d) award. The requisite elements of § 523(d) are: a) a creditor's request for a determination of dischargeability; b) a consumer debt; c) the discharge of the

consumer debt; and d) lack of substantial justification. There is no statutory requirement that there be a trial on the merits. *Id.*

■ Debtor has satisfied the four elements in this proceeding. First Chicago filed a complaint for the determination of the dischargeability of a consumer debt and that debt was discharged. Further, as will be shown, First Chicago at the time of the filing lacked substantial justification to file the complaint.

I have no evidence before me as to what investigation was conducted at the time the complaint was filed. The only evidence submitted by First Chicago was the declaration of Ferns & Ferns' attorney Carla McBeath which simply states "the information Plaintiff had regarding the use of the credit card was that the account was inactive for seven months prior to use of the card. $6,641.01 was charged between March 15, 1989 and March 22, 1989 for furniture. The Chapter 7 petition was filed on August 28, 1989. The account had a zero balance for seven months prior to this time." Not only is the evidence hearsay, but it is also insufficient to prove that the debtor made the purchases either knowing that she was insolvent or lacked the ability to pay on the account.

This is a clear case of counsel for First Chicago shooting from the hip and hoping to fill in the blanks later. Unable to get debtor's attention by sending its letter of September 22, 1989, some ten weeks before the filing deadline of December 4, 1989, First Chicago simply filed its complaint to determine dischargeability.

The procedural avenues for pre-trial discovery went unused. Prior to the filing of the complaint, First Chicago failed to request an examination of the debtor pursuant to Bankruptcy Rule 2004, nor did it request an extension of time within which to file a complaint to determine dischargeability. "When in doubt, plaintiff can readily obtain additional time to investigate the facts before filing the complaint. Plaintiff has Bankruptcy Rule 2004 available to conduct discovery to determine if the filing of the complaint is justified."

*Kullgren,* 109 B.R. at 954. Plaintiff's counsel merely states, without any specificity, that First Chicago did not have sufficient time to request a B.R. 2004 examination.

The record is devoid of any competent evidence to indicate that First Chicago or its counsel undertook any discovery prior to the filing of the complaint. If First Chicago had conducted an investigation it would have discovered that debtor had made payments towards the charges until she developed health problems and became unable to work. The only conclusion that can be drawn is that the complaint was filed just prior to the impending statute of limitations to preserve this court's jurisdiction over the matter until First Chicago could discover if it had any evidence to support its claim of non-dischargeability of debt.

Under the evidence presented to this court, an award of fees and costs under § 523(d) is appropriate. Debtor has incurred $5,686.50 in attorney's fees and $21.50 in costs in connection with her defense of the adversary proceeding and in bringing the motion for fees and costs. After a review of the time sheets of debtor's counsel, the discovery undertaken and research into current case law, the court finds the fees and costs incurred to be reasonable. No special circumstances exist which would make an award of fees under § 523(d) unjust.

## CONCLUSION

First Chicago was not substantially justified in filing the complaint and shall pay debtor the sum of $5,708 in fees and costs.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.