**In re Amy Elizabeth STOCKARD and Jonathan C. Stockard, Debtors.**

**PROVIDIAN BANCORP f/d/b/a First Deposit National Bank, Plaintiff,**

v.

**Amy Elizabeth STOCKARD, Defendant.**

**Bankruptcy No. 396–11584.**
**Adversary No. 397–0165A.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 16, 1997.

238

Melissa M. Kurtz, Goodlettsville, TN, Trabue, Sturdivant & Dewitt, William R. O'Bryan, Jr., Nashville, TN, for Plaintiff.

Rothschild & Associates, Marie M. Salas, Nashville, TN, for Defendant.

## *MEMORANDUM*

ALETA ARTHUR TRAUGER,
Bankruptcy Judge.

This adversary proceeding was dismissed on September 26, 1997, pursuant to a Stipulation of Dismissal signed by counsel for both parties. On September 30, 1997, the debtor [1] filed a motion requesting that her attorney fees, in the amount of $1,950, be awarded pursuant to 11 U.S.C. § 523(d). The creditor, Providian Bancorp, opposes the motion.

The court held an evidentiary hearing on November 18, 1997, at which the debtor and Melissa Kurtz, original counsel for Providian, testified. By stipulation, transcripts of the FED. R. BANKR. P.2004 examination of the debtor and the deposition of Alice Quinton,[2] the Attorney Network Manager for Providian, were introduced into evidence. Based upon the testimony, exhibits admitted into evidence, briefs and the record as a whole, the court finds that the motion for attorney

---

1. For ease of reference, Mrs. Stockard will sometimes be referred to as "the debtor," despite the fact that she and her husband are joint debtors in this Chapter 7 case.

2. This deposition was admitted into evidence as Exhibit B pursuant to a stipulation that referred to it as the transcript of a Rule 2004 examination.

fees should be granted. The following constitute findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## FACTS

In June 1996, Amy Elizabeth Stockard, the defendant/codebtor herein, received by mail from Providian an unsolicited "30–Second Response Certificate," inviting her to "accept [an] invitation" for a pre-approved [3] gold credit card account. (Ex. C.) This document advertised "No Annual Fee" and "$20,000 Credit Line." All the debtor had to do in order to accept this "invitation" was to fill in her social security number, home phone number, "Work/Second" phone number and "Annual Household Income" and sign the form. The debtor filled in this information, writing the same phone number (her home phone number) in both places (because she was not employed at the time) and writing in the space provided for "Annual Household Income" the notation "$47,000—husband's salary + mine." [4] At this time, the debtor's husband's salary at Nissan Motor Company was approximately $38,000; he also received annual bonuses of $3,200–3,600. Because she is deaf, the debtor was receiving social security benefits of $5,760 per year (at $480 per month), and her daughter was receiving social security benefits of $2,112 per year (at $176 per month). Using the lowest bonus figure, this is a total "annual household income" of $49,072.[5]

Upon receiving the debtor's application, Providian "pulled" three credit reports on the debtor and issued her a credit card with a $5,000 credit limit.[6] Providian did not obtain a credit report on the debtor's husband and did not independently verify in any way the sources of the household income, including whether anyone in the household was employed.

The debtor began using this credit card in June 1996 and received her first statement in early July. The balance owing on that statement was $1,422.97. A minimum payment of $28 was due by July 28. On August 16, the debtor submitted a $30 payment. The next statement, dated August 5, 1996, reflected a balance owing of $4,175.36, with a minimum payment of $112 due by August 30. On September 17, the debtor submitted a payment of $115. The next statement, dated September 4, 1996, showed a balance owing of $4,716.77, with a minimum payment of $176 due by September 29. On October 15, the debtor submitted a $176 payment.[7] The October 4, 1996 statement showed a balance owing of $4,968.99, with a minimum payment of $160 due by October 29. The $176 payment had not been received at the time this statement was issued; no additional payment was made. The November 5, 1996 statement showed a balance owing of $4,903.78, with a minimum payment of $98 due by November

---

**3.** Ms. Kurtz asserted that the offer was not pre-approved. However, in her 2004 examination, Ms. Quinton, the Providian representative, quoted language on the reverse side of the "Certificate" which said that the credit card was pre-approved. The reverse side of the "Certificate," (Ex. C), was not introduced into evidence.

**4.** Although Ms. Kurtz maintained that the creditor was not relying upon any misrepresentations in the application, she more than once eluded to the debtor's notation on Exhibit C, "husband's salary + mine," as a misrepresentation in that Mrs. Stockard had no "salary" at this time, only social security benefits. Providian, however, asserts that it is relying solely upon the implied representation theory and not upon misrepresentations in the application concerning the debtor's financial condition, which would come within § 523(a)(2)(B) and is not alleged here.

**5.** Although the debtor testified that she did not count it as part of household income for pur-

poses of the credit card application, she still had in a savings account some of the $10,000 gift that she had received from family members in December 1993, when her daughter was born.

**6.** At this time, Mr. and Mrs. Stockard had outstanding balances owing to Citibank on a credit card, to NationsBank on a line of credit and to Commercial Credit, among others. (Ex. A at 6–7.)

**7.** Ms. Quinton testified that one of the reasons for the filing of this action was that the debtor had made three "below minimum payments." Ms. Kurtz testified initially that the debtor made only one payment, which was below the minimum amount. In rebuttal, she testified that Providian's records showed only two payments were made. Upon more closely examining the records, she testified that three payments were made. In fact, the debtor made three payments which were in the correct amount or exceeded it, but they were late.

30. The debtor submitted no payment. The December 4, 1996 statement showed a balance owing of $5,104.32 (the first time the balance exceeded the $5,000 limit), with a minimum payment of $304.32 due by December 29. The debtor made no payment on this statement. The last transaction date on this credit card was November 21, 1996. (Collective Ex. D.)

Despite the fact that all of the payments made by the debtor were late and that no payments were made after October 15, Providian never revoked the card or sent a warning letter to the debtor. Ms. Quinton, in fact, testified that the debtor's account "was in good standing" for the entire time she used it until December, when her statement showed a balance (including interest and late charges) that exceeded the limit by $104.32. The debtor testified that, beginning in October 1996, family finances were getting tight, in November they were worse, and by December she was considering bankruptcy. She consulted bankruptcy counsel, Maria Salas, in December and filed a joint petition under Chapter 7 with her husband on December 20, 1996. At the time of the filing, the debtor was working as a temporary holiday store clerk.[8]

On April 18, 1997, Ms. Kurtz took the Rule 2004 examination of the debtor, and on April 28, 1997, Providian filed a Complaint, alleging that its debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) or (C).

After the filing of the adversary proceeding, the parties engaged in fairly substantial discovery. On September 5, 1997, the debtor filed a Motion to Compel, with a request for an expedited hearing in light of the October 8, 1997 trial date. The debtor was seeking to compel the production of certain information that Providian was claiming to be trade secrets. An expedited hearing on the motion was set for September 16. At that hearing, counsel for both parties appeared and announced that the adversary was to be dismissed. The Stipulation of Dismissal was filed September 26, 1997.

*Analysis*

■ A court must award costs and a reasonable attorney fee under 11 U.S.C. § 523(d) if four elements are satisfied: (1) the creditor requested "a determination of dischargeability of a consumer debt under subsection (a)(2)" of 11 U.S.C. § 523; (2) the debt was discharged; (3) the creditor's "position" throughout the litigation was not "substantially justified"; and (4) "special circumstances" do not exist that "would make the award unjust." *See Rochester Hills Chrysler Plymouth v. Phillips (In re Phillips)*, 153 B.R. 758, 763 (Bankr.E.D.Mich.1993). The parties agreed at the November 18, 1997 hearing that (1), (2) and (4) had been established and that the only element at issue is the third. Providian conceded that it has the burden of proving that its position was substantially justified. *See Firstbanks v. Goss (In re Goss)*, 149 B.R. 460, 462 (Bankr. E.D.Mich.1992); *see also Thorp Credit, Inc. v. Carmen (In re Carmen)*, 723 F.2d 16, 17 (6th Cir.1983) (applying the pre–1984 version of § 523(d)).

■ A creditor's position is substantially justified if it has " 'a reasonable basis in both law and in fact' " at all times during the litigation. *Phillips*, 153 B.R. at 763 (quoting *First Chicago FCC Nat'l Bank v. Willett (In re Willett)*, 125 B.R. 607, 609 (Bankr.S.D.Cal. 1991)); *see First Card v. Carolan (In re Carolan)*, 204 B.R. 980, 987–88 (9th Cir. B.A.P. 1996) (determining whether the filing and prosecution of a § 523(a)(2)(A) complaint was substantially justified); *Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 220–21 (N.D.Ill.1987) ("[W]e think [the] better ... construction of 523(d) is that when a creditor learns that it will not be able to prove its case, but continues to pursue the case, it falls within the statute...."). This definition is identical to that adopted by the U.S. Supreme Court in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), for purposes of 28 U.S.C. § 2412(d), enacted as part of the Equal Access to Jus-

---

**8.** The debtor had at some previous time worked at Nissan Motor Company. (Ex. A at 1.) She received a Master's degree in social work in May 1994 but testified that she has been unable to find work in that field, at least in part because of her deafness.

tice Act.[9] In *Pierce*, the Court chose the meaning of "substantially" that is "most naturally conveyed by the phrase [substantially justified] ...—that is, justified to a degree that could satisfy a reasonable person." 487 U.S. at 565, 108 S.Ct. at 2550, 101 L.Ed.2d at 504. This reasonable person standard "is no different from the 'reasonable basis both in law and fact' formulation...." *Id.* at 565–66, 108 S.Ct. at 2550, 101 L.Ed.2d at 504–05 (citing numerous cases, including *United States v. Yoffe*, 775 F.2d 447, 449–50 (1st Cir.1985)). The § 523(d) "substantially justified" requirement, added in 1984,[10] was "drawn from the Equal Access to Justice Act." *In re Hingson*, 954 F.2d 428, 429 (7th Cir.1992). The court, therefore, adopts the reasonable person standard set forth in *Pierce* for purposes of applying the § 523(d) phrase "substantially justified." *See People's Bank v. Poirier (In re Poirier)*, 214 B.R. 53, 55, 56–57 (Bankr.D.Conn.1997).

█ Providian's complaint contains alternative requests for relief—a nondischargeability determination under either subsection (A) or subsection (C) of § 523(a)(2). The court must award costs and fees under § 523(d) only if Providian's position on both causes of action was not substantially justified. Providian's counsel conceded at the hearing that the § 523(a)(2)(C) action was not substantially justified.[11] The court, therefore, need only determine whether the § 523(a)(2)(A) action was substantially justified, that is whether Providian had a reasonable basis in both law and fact to file and continue to pursue an action alleging that its debt was nondischargeable pursuant to that section of the Code.

Section 523(a)(2)(A) provides that a debt is not discharged if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Under this section, the creditor must prove:

(1) the debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit" (§ 523(a)(2)) through a material misrepresentation;

(2) the debtor knew the representation was false at the time made or the debtor made the representation with gross recklessness as to its truth;

(3) the debtor made the misrepresentation with the intent to deceive;

(4) the creditor justifiably relied upon the debtor's misrepresentation; and

(5) the creditor's reliance on the misrepresentation was the proximate cause of its loss.

*See Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993). The creditor must prove each of these five elements of its cause of action by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755, 767 (1991). Exceptions to dischargeability are to be narrowly construed. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717, 719 (1915).

Providian is advancing in this action the "implied representation" theory of nondischargeability. Under this theory, with each use of a credit card, the holder is making the implied representation that he or she has the intent to pay the charges incurred. *See Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir.1996); *AT&T Universal Card Servs. Corp. v. Akdogan (In re Akdogan)*, 204 B.R. 90, 96 (Bankr.

---

9. Section 2412(d)(1)(A) mandates an award of fees, costs, and expenses to the prevailing party "in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

10. The 1978 Code required courts to award fees and costs "unless such granting of judgment would be clearly inequitable." In 1984, the "clearly inequitable" language was replaced by the present-day language.

11. Section 523(a)(2)(C) creates a presumption of nondischargeability under § 523(a)(2)(A) if certain conditions are met, including that the debtor owes consumer debts to a single creditor that aggregate "more than $1,000 for 'luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief under this title." Here, the debtor's charges to the Providian credit card during the 60–day period preceding bankruptcy total $106.17, and, with one possible exception, they do not appear to be for luxuries.

E.D.N.Y.1997). Neither the Sixth Circuit nor this court has yet accepted this theory of nondischargeability. Although the Sixth Circuit was presented with the issue in *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1084 (6th Cir.1988), *overruled in part by Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), *and Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), it ruled on other grounds and made no clear statement accepting or rejecting the theory.

■ Assuming this court would allow Providian to proceed under this theory, to defeat the debtor's present motion for attorney fees, Providian must prove that it had a reasonable basis in law and fact for believing that it could prove every element necessary for making its debt nondischargeable under § 523(a)(2)(A), including the fact that it justifiably relied on the debtor's alleged implied misrepresentation as to her intention to pay the charges incurred. *See Beneficial of Mo., Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 928 (Bankr.W.D.Mo.1991) (rejecting cases [12] which hold that "as long as the plaintiff is able to prove a major element of its case, it is entitled to rely on the possibility that the court will find in its favor on the other elements" and, instead, holding that attorney fees should be imposed "on the plaintiff whenever the court finds that the plaintiff proceeded with its case past a point where Plaintiff knew or should have known that it could carry its burden of proof").

The fact that the creditor's reliance must be justifiable was established by the U.S. Supreme Court in *Field v. Mans* and is explained there as follows:

"Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." ...

... [J]ustifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and that "[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."

*Field*, 516 U.S. at 71, 116 S.Ct. at 444, 133 L.Ed.2d at 362–63 (citations omitted) (second alteration and first omission in original) (quoting RESTATEMENT (SECOND) OF TORTS § 545A cmt. b (1976); William Prosser, LAW OF TORTS § 108 (4th ed.1971)).

■ Ms. Kurtz testified that Providian would have proved at trial that its reliance on the debtor's implied representations that she intended to pay the charges as incurred was justifiable because of Providian's due diligence conducted prior to issuing the credit card. This process was explained by Providian's representative, Ms. Quinton, in her deposition. Providian uses certain criteria to select persons to whom invitations for credit cards are mailed. It then applies additional criteria for deciding, among the applicants, those to whom a credit card will be issued. Part of this screening process is the review of credit reports for "red flags." According to Ms. Quinton, the debtor's credit reports (Mr. Stockard's were not examined) revealed no "red flags" and her debt to household income ratio (income and employment were not verified) met its guideline. (Ex. B at 16, 24.) Because the debtor passed all of these various screenings, Providian maintains it was justified in relying upon her continuing representation that, as she charged each expense to her credit card, she intended to pay the indebtedness incurred.

■ Providian had the burden of proving that its reliance was justifiable as the charges were incurred, but it presented absolutely no proof of justifiable reliance during the six months that the credit card was used. Despite the fact that each of the first three

**12.** *Compare Citizens Nat'l Bank v. Burns (In re Burns)*, 77 B.R. 822, 823–24 (D.Co.1987), *aff'd on other grounds*, 894 F.2d 361 (10th Cir.1990), *with Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 218–21 (N.D.Ill.1987).

payments was at least two weeks late and then payments ceased altogether, Providian did not revoke the card and did not even send the debtor a warning letter.[13] Providian's position was that its criteria for issuing the credit card was so dependable and predictive that it supplied the necessary justifiable reliance element of proof. This position fails because the creditor must prove that it justifiably relied upon the debtor's misrepresentations. Since, under this theory, the implied alleged misrepresentation is made each time the debtor uses the credit card, the justifiable reliance must relate to the period during which the charges (implied misrepresentations) were being incurred. Providian presented no proof of justifiable reliance during that time period.

Even if Providian's position on justifiable reliance were valid—and the court holds it is not—Providian's refusal to reveal its secret credit criteria causes it to lose here on two other grounds. First, if Providian were allowed to base its justifiable reliance on its due diligence in the issuing of the credit card, Providian would have to have revealed exactly how the debtor met its criteria and guidelines in order to have qualified for this credit card. It was not sufficient to simply state in conclusory fashion that the debtor met its criteria, because the court might not agree that meeting the criteria justified Providian's reliance. If, for instance, Providian's credit criteria targeted the debtor because she had a high debt load and, therefore, was unable to make more than minimum monthly payments, the debtor might well have made a strong argument that Providian's reliance was not justifiable in the context of the implied representation theory.

The proof introduced by Providian on this point was entirely inadequate to establish that it had a reasonable basis in fact. The evidence consisted of the conclusory statements of Ms. Quinton that the debtor met their credit criteria and that there were no "red flags" in the credit reports. The credit reports were not introduced at the hearing and appear nowhere in the court file. Ms. Quinton did not explain what a red flag would be for Providian, and she did not reveal the credit criteria or the debt to income ratio that the debtor met. Without the specific information as to why Providian issued this credit card to the debtor, the court would hold that Providian failed to carry its burden of proving that it had a factual basis for its assertion that it justifiably relied upon the debtor's implied representations of the intent to pay.

■ Second, Providian could not have been substantially justified in bringing this action if it was unwilling to produce information that was properly within the scope of discovery and that the debtor needed to rebut Providian's assertion of justifiable reliance. Providian apparently provided the debtor with the credit reports, the certificate that the debtor completed in applying for the card, and the monthly statements. However, it refused to disclose its credit criteria and guidelines (and the corresponding information about the debtor derived from it), asserting that this information was confidential, proprietary trade secrets or was irrelevant. Ms. Kurtz testified that the credit criteria is something that is "in a locked safe, every copy of it is numbered, . . . you can't get to it, they don't disclose it, . . . nobody can get it." Ms. Quinton testified similarly. When debtor's counsel filed a motion to compel the production of this information, according to the testimony of Ms. Kurtz and the argument of its counsel, Providian dismissed this action rather than risk the court's ordering that it be produced.[14] A credit card company may not bring a nondischargeability action with the knowledge and intent that it will not produce discoverable information central to the issues and then, when threatened with having to do so, dismiss the action. It is this sort of abuse that § 523(d) is designed to redress.

---

**13.** Ms. Kurtz initially testified that Providian did send the debtor a warning letter. However, after reviewing a document that was not introduced into evidence, she testified that no warning letter was sent.

**14.** Inexplicably, Alice Quinton, in her Declaration attached to Providian's Amended Response to the debtor's motion for fees, stated that Providian "did not dismiss this case to avoid disclosing the credit criteria requested by Defendants pursuant to their motion to compel discovery."

Under § 523(d), Mrs. Stockard is entitled to an award of all fees and costs incurred in association with this adversary. She requests in her motion $1,950; however, this does not include all fees and costs incurred in the prosecution of her § 523(d) motion. Debtor's counsel, therefore, shall submit an affidavit detailing all fees and costs and a proposed judgment. After the filing of the affidavit, Providian will have ten days to object to the reasonableness of the fees and costs. If Providian makes no request for a hearing, the court will rule on the basis of the papers submitted.

### ORDER

For the reasons stated in the Memorandum filed herewith, it is hereby **ORDERED** that the Debtor/Defendant's Motion for Fees Pursuant to 11 U.S.C. § 523(d) is **GRANTED**. Defendant's counsel shall submit an affidavit detailing all fees and costs and a proposed judgment. After the filing of the affidavit, plaintiff will have ten days to object to the reasonableness of the fees and costs. If plaintiff makes no request for a hearing, the court will rule on the basis of the papers submitted.