**In re Rory Dean HUNT, Debtor.**

**First Card, Appellant,**

v.

**Rory Dean Hunt; J. Calvin Hermansen, Appellees.**

**No. 99–15856.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 2000*

Filed Feb. 6, 2001

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Stewart D. Rine, Concord, California, for the appellant.

Warren A. Jones, Sacramento, California, for the appellee.

Before: THOMPSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Appellee Rory Dean Hunt filed for bankruptcy and Appellant First Card commenced an adversary proceeding to have Hunt's debt to First Card declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) on the ground of actual fraud. After a brief trial, the bankruptcy court entered judgment for Hunt, and that decision was not appealed. The bankruptcy court subsequently granted Hunt's motion for attorney's fees pursuant to 11 U.S.C. § 523(d). The fee award was slightly reduced but otherwise affirmed by the Ninth Circuit Bankruptcy Appellate Panel (BAP), and this timely appeal followed. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

## I. BACKGROUND

When Hunt filed for bankruptcy, he scheduled $5,000 in credit card debt owed to First Card. First Card sought to have that debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A), alleging that Hunt had obtained the funds fraudulently, never intending to repay them. Hunt was represented pro bono in the § 523(a)(2)(A) proceeding by McGeorge School of Law's Community Legal Services (McGeorge).[1]

First Card alleged that Hunt "laundered" a $4,500 cash advance on his First Card credit card through his Wells Fargo credit card account—Hunt allegedly used the cash advance to pay down the balance on the Wells Fargo card and then immediately took roughly the same amount in cash advances on the Wells Fargo card. Hunt claimed that he merely used the First Card cash advance to transfer higher-interest debt from his Wells Fargo account to his lower-interest First Card account. First Card claimed, however, that

the Wells Fargo interest rate was lower than the First Card interest rate on cash advances, which would make Hunt's theory implausible.

At trial, the bankruptcy court quashed First Card's subpoena of Hunt because of defective service—First Card had failed to include the witness fee and mileage required by Federal Rule of Civil Procedure 45(b)(1) (which is made applicable to adversary proceedings by Bankruptcy Rule 9016). First Card next sought to have a transcript of Hunt's deposition testimony admitted into evidence, but the court excluded it because First Card had failed to provide Hunt with a copy of the transcript at least ten court days before trial, as required by Local Rule 9017–1 and by the court's pretrial order. First Card then moved for a continuance, but the motion was denied.

First Card succeeded in having some exhibits admitted into evidence, and then it rested. The exhibits showed that Hunt had used his First Card cash advance to pay the balance on his Wells Fargo account, but they showed nothing regarding what Hunt did with the Wells Fargo account thereafter or regarding Hunt's intent to repay First Card. After First Card rested, Hunt moved for judgment on partial findings, and the motion was granted. First Card did not appeal.

Hunt subsequently moved for attorney's fees under 11 U.S.C. § 523(d), which provides that in a nondischargeability proceeding regarding a consumer debt, a bankruptcy court "shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, . . . [unless] special circumstances would make the award unjust." 11 U.S.C. § 523(d). First Card opposed the motion on various grounds, but it was nonetheless

---

1. We commend McGeorge and its law students for their pro bono representation of

Hunt in this case.

granted in the full amount requested, $4,935.

On appeal, the BAP reduced the amount by $397.50 because of concededly erroneous information that had been submitted to the bankruptcy court. This timely appeal followed. First Card contends that the bankruptcy court abused its discretion in awarding attorney's fees to Hunt and, in any event, that such fees were excessive.[2]

## II. STANDARD OF REVIEW

■ Decisions of the BAP are reviewed de novo. *Anastas v. American Sav. Bank (In re Anastas),* 94 F.3d 1280, 1283 (9th Cir.1996). This court thus reviews the decision of the bankruptcy court under the same standard applied by the BAP. *Id.*

■ There is no Ninth Circuit case law regarding the standard of review for an award of attorney's fees pursuant to § 523(d), but the BAP has held that such awards are reviewed for abuse of discretion. *First Card v. Carolan (In re Carolan),* 204 B.R. 980, 984 (9th Cir.BAP 1996). We adopt that holding for the following reasons: (1) The Supreme Court has held that an award of attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), is reviewed for abuse of discretion, *Pierce v. Underwood,* 487 U.S. 552, 558–59, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); (2) § 523(d) contains the same "substantially justified" language as the EAJA and was modeled on it, *see* S.Rep. No. 98–65, at 9 (1983) (reporting on S. 445, the forerunner of § 523(d)); and (3) the Supreme Court's reasoning in *Pierce* applies with equal force here, *see Pierce,* 487 U.S. at 559–63, 108 S.Ct. 2541. The amount of a fee award is reviewed for abuse of discretion. *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1043 (9th Cir.1997).

## III. DISCUSSION

### A. Waiver

First Card contends that Hunt waived his right to attorney's fees.

■ First, First Card argues that under Bankruptcy Rule 7008(b), a request for attorney's fees in any bankruptcy proceeding must be made in the pleadings. *See* Bankr.R. 7008(b) ("A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate."). Similarly, First Card argues that Federal Rule of Civil Procedure 9(g) (which is made applicable to adversary proceedings by Bankruptcy Rule 7009) requires that claims for "items of special damage" be "specifically stated." Because Hunt's answer did not include a request for attorney's fees, First Card argues that Hunt waived his right to fees.

Bankruptcy courts are split on the issue of whether a debtor must request fees in the pleadings, for fees to be awardable under § 523(d). *Compare Thorp Credit, Inc. v. Smith (In re Smith),* 54 B.R. 299, 303 (Bankr.S.D.Iowa 1985) (holding that no request in the pleadings is required), *with Montgomery Ward & Co. v. Blackburn (In re Blackburn),* 68 B.R. 870, 881 (Bankr. N.D.Ind.1987) (holding that a request is required).

■ We need not resolve that issue in this case, however, because First Card's argument fails on independent grounds. Hunt requested attorney's fees in his pretrial conference statement, and that request was incorporated by reference in the bankruptcy court's pretrial order. A pretrial order "has the effect of amending the pleadings." *999 v. C.I.T. Corp.,* 776 F.2d 866, 871 n. 2 (9th Cir.1985) (holding that the affirmative defense of mitigation of damages had not been waived despite its having been omitted from the pleadings, because it was included in the pretrial order). Moreover, "a pretrial order will be liberally construed to permit consideration

---

**2.** Hunt seeks fees on appeal under Fed. R.App. P. 38, but such fees should be sought by timely motion filed under Ninth Cir. R. 39–1.6.

of any issues that are embraced within its language." *ACORN v. City of Phoenix*, 798 F.2d 1260, 1272 (9th Cir.1986) (citations and internal quotation marks omitted). Because Hunt's request for attorney's fees was incorporated by reference in the pretrial order, which had the effect of amending the pleadings, Hunt did not waive his right to fees by omitting the request from his answer, even assuming that a pleaded request for fees were required. The waiver argument therefore fails.

■ First Card's second argument is that Hunt's right to fees was waived by certain statements of his counsel at Hunt's deposition. This argument is without merit. Hunt's counsel merely stated that the pleadings that were then before the court did not address attorney's fees, and he added that he did not anticipate filing an amended pleading. Such statements do not even amount to a waiver of the right to move to amend a pleading, let alone a waiver of any right that might be exercised through such an amendment. Moreover, the remarks of First Card's counsel indicated that he recognized that there had been no waiver. He explicitly acknowledged the possibility that Hunt would change his mind. Thus, the record does not support the contention that there was a waiver of fees at the deposition.

■ Third, First Card argues that Hunt cannot be awarded attorney's fees because he did not request them or submit any supporting evidence until after the conclusion of the trial. The argument lacks merit. As we explained above, Hunt's request for attorney's fees was included in the

pretrial order. First Card cites no authority to support the proposition that a debtor requesting fees under § 523(d) cannot move for fees and submit supporting evidence after trial.[3] In any case, bankruptcy courts and the BAP have permitted debtors to request fees and to introduce relevant evidence after judgment is granted in their favor. *See, e.g., First Chicago FCC Nat'l Bank v. Willett (In re Willett)*, 125 B.R. 607, 609–10 (Bankr.S.D.Cal.1991) (awarding fees that were requested and proved after dismissal of the creditor's complaint); *American Sav. Bank v. Harvey (In re Harvey)*, 172 B.R. 314, 317, 320 (9th Cir.BAP 1994) (affirming an award of fees that were requested after the court had granted judgment against the creditor). This approach makes sense-it conserves judicial resources by freeing a debtor from any obligation to submit evidence of attorney's fees until after the creditor's claim against the debtor has failed-and First Card has presented no authority or argument against it.[4]

For all of these reasons, First Card has failed to show that Hunt waived his right to attorney's fees.

### B. Substantial Justification

First Card argues that the bankruptcy court erred in finding that its position in bringing the nondischargeability action was not substantially justified. It claims that sufficient evidence was admitted at trial to show that its claim was not unreasonable or brought in bad faith, and that under the appropriate standards for nondischargeability actions, this action was substantially justified.[5]

---

3. First Card cites *Norbank v. Kroh (In re Kroh)*, 87 B.R. 1004 (Bankr.W.D.Mo.1988), and *Household Fin. Corp. v. Howard (In re Howard)*, 73 B.R. 694 (Bankr.N.D.Ind.1987). Neither case is helpful, however, because both deal only with the award of fees to creditors, not to debtors.

4. Moreover, awaiting the conclusion of the trial or hearing (usually to see who the prevailing party is) before making an application for attorney's fees is the common and accepted practice in all courts. *See, e.g.*, Ninth Cir.

R. 39–1.6 (providing that request for attorney's fees must be made within 14 days from the expiration of the period within which to petition for rehearing); Cent. Dist. Cal. Local Rule 16.10 (providing that motion for attorney's fees "shall be served and filed within fourteen (14) days after the entry of judgment").

5. First Card also argues that the deposition transcript should have been admitted at trial, pursuant to Fed.R.Civ.P. 32(a)(1), but this argument is meritless. First Card did not ap-

■ In *Pierce*, the Supreme Court interpreted the "substantially justified" standard in the EAJA as requiring that a claim have a reasonable basis both in law and in fact. *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541. Because the standard for a fee award under § 523(d) is the same as the EAJA standard and was modeled on it, *see* S.Rep. No. 98–65, at 9 (1983) (describing S.445, the forerunner of § 523(d), as "incorporat[ing] the standard for award of attorney's fees contained in the Equal Access to Justice Act"), § 523(d) should be interpreted in the same way. The BAP has taken this approach, *Carolan*, 204 B.R. at 987; *Harvey*, 172 B.R. at 318, and we hereby adopt it.

■ The BAP has also held that the creditor bears the burden of proving that its position is substantially justified. *Carolan*, 204 B.R. at 987 (holding that fees are to be awarded "unless the creditor establishes that its nondischargeability complaint is substantially justified"); *Harvey*, 172 B.R. at 318 (same). This approach is also supported by the legislative history of § 523(d). S.Rep. No. 98–65, at 59 (1983) ("To avoid a fee award, the creditor must show that its challenge had a reasonable basis both in law and in fact."). For these reasons, we adopt this rule as well.

■ There are no clear rules, however, regarding how a creditor may carry this burden: Must it be by the introduction of admissible evidence only, or are other methods of persuasion permissible? In *Pierce*, for example, the Court treated a party's willingness to settle as a relevant consideration in determining whether that party's position was substantially justified. *See Pierce*, 487 U.S. at 568, 108 S.Ct. 2541. Similarly, the Seventh Circuit in *In re Hingson*, 954 F.2d 428 (7th Cir.1992), based its finding of substantial justification largely on the degree of progress in the settlement negotiations before they broke down. *See id.* at 429 ("The settlement negotiations ultimately collapsed in acri-

mony, but that they got as far as they did suggests that the claim of fraud may have had substantial merit.").

Although such cases indicate that a finding regarding substantial justification need not be based solely on the admissible evidence before the court, the cases do not go so far as to suggest that unsupported allegations in a creditor's pleadings can be sufficient to carry the creditor's burden under § 523(d). Beyond what was admitted at trial, the only evidence that First Card submitted was its counsel's declaration in opposition to Hunt's request for attorney's fees, but that declaration dealt only with the amount of the fees requested.

The evidence admitted at trial had virtually no tendency to prove that Hunt did not intend to repay First Card. Intent not to repay is central to the actual fraud inquiry in a nondischargeability proceeding under § 532(a)(2)(A). *See Anastas*, 94 F.3d at 1286 ("[T]he express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt."). *See generally Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087–88 (9th Cir.1996) (adopting a totality-of-the-circumstances test, including a nonexclusive list of twelve relevant factors, for determining the existence of intent not to repay). Thus, the evidence did not tend to prove that First Card's position was substantially justified. First Card's arguments on appeal are consequently based, not on the evidence, but entirely on First Card's repeated allegations that Hunt "laundered" the money borrowed from First Card through his Wells Fargo account. These allegations, however, find absolutely no support in the record.

Because the burden was on First Card to prove that its position was substantially justified, and because the evidence that

peal the judgment entered in favor of Hunt. Hence, any right to challenge the evidentiary rulings that led to it has been waived. In any

case, Fed.R.Civ.P. 32(a)(1) did not require the admission of the deposition transcript.

First Card submitted did not show that its claim had a reasonable basis in law and in fact, the bankruptcy court did not abuse its discretion in finding that First Card's position was not substantially justified.[6]

## C. Special Circumstances

■■■ Section 523(d) provides that fees must be awarded if the creditor's position is not substantially justified, "except that the court shall not award such ... fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d). First Card argues that because McGeorge's representation of Hunt "may be in violation of California Business and Professions Code § 6223," such special circumstances exist.[7]

Article 14 of the Business and Professions Code, of which § 6223 is a part, concerns the provision of funds for legal services to indigents. Section 6223 provides that "[n]o funds allocated by the State Bar pursuant to this article shall be used for ... [t]he provision of legal assistance with respect to any fee generating case" or for "[t]he provision of legal assistance, except to indigent persons or except to provide support services to qualified legal services projects as defined by this article." Cal. Bus. & Prof.Code § 6223. "Fee generating case," "indigent person," and "qualified legal services project" are all defined in the definitions section of Article 14. *See* Cal. Bus. & Prof.Code § 6213. There is no California case law interpreting either § 6223 or § 6213.

There is almost no case law interpreting the "special circumstances" language in § 523(d). *Hingson* indicates that the clause "should be interpreted with refer-

ence to traditional equitable principles." *Hingson*, 954 F.2d at 429–30 (citations and internal quotation marks omitted). Thus, for example, "if a debtor could somehow be found to have procured the creditor's groundless claim of fraud, the exception for special circumstances would justify the denial of the debtor's application for attorney's fees." *Id.* at 430.

■■■ On this or any other reasonable interpretation of the "special circumstances" exception, the bankruptcy court did not abuse its discretion in finding that the exception does not apply in the instant case. McGeorge adduced evidence that it receives some of its funding through Article 14 sources and some through other sources. The director of the McGeorge clinic also stated that no Article 14 funds were expended in this case. First Card failed to show that any Article 14 funds were used for McGeorge's provision of legal services to Hunt, so there was no showing that § 6223 was violated. And even if such a violation had been shown, traditional equitable principles would not prohibit the award of attorney's fees to Hunt. The purpose of § 523(d) is to deter creditors from bringing frivolous challenges to the discharge of consumer debts. *See* S.Rep. No. 98–65, at 9–10 (1983). That purpose could be seriously thwarted if the "special circumstances" exception became a vehicle for rigorous application of some sort of "unclean hands" doctrine to debtors' attorneys.

For all of these reasons, the bankruptcy court did not abuse its discretion in finding

---

**6.** First Card also argues that "cases brought in good faith should not be chilled," but this argument represents a misunderstanding of the purpose of § 523(d). Because fees are to be awarded under § 523(d) whenever the creditor's position is not substantially justified (subject to the special circumstances exception), § 523(d) certainly does aim to chill some actions that are brought in good faith, namely, those that do not have a reasonable basis in law and in fact.

**7.** First Card also claims that the fact that McGeorge is representing Hunt pro bono was concealed from the bankruptcy court. That fact was, however, disclosed to the bankruptcy court in First Card's memorandum in opposition to the fee request. The fact is in any case irrelevant, because § 523(d) does not distinguish between pro bono representation and fee-generating representation, and the deterrence policy underlying § 523(d) is served by the award of fees to debtors who are represented pro bono.

that the "special circumstances" exception does not apply.

## D.  Excessive Amount

First Card raises a number of arguments that the amount of attorney's fees awarded is excessive.  It contends that both the hours and the hourly rates claimed by McGeorge are excessive and unsupported by evidence, that the excessive hours expended by McGeorge were not caused by excessive discovery by First Card, that the number of hours was unreasonably inflated by the fact that the case was a "training exercise" for a law student, and that *Carolan* indicates that attorneys in such cases are "routinely awarded only a very modest flat fee."

"The primary method used to determine a reasonable attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate." *Yermakov v. Fitzsimmons (In re Yermakov),* 718 F.2d 1465, 1471 (9th Cir.1983). Contrary to First Card's suggestion, *Carolan* says nothing about routine awards of only a modest flat fee.

According to the BAP, the bankruptcy court's award was based on a declaration and time sheet submitted by Warren Jones, who represented Hunt for McGeorge.  The declaration requested a $150 per hour rate for Jones and a $75 per hour rate for a certified third-year law student also working on the case.  The declaration described Jones' experience and his customary billing rate of $145 to $165 per hour for civil matters when he was in private practice.  The declaration also cited a case in which a bankruptcy court had awarded fees to McGeorge at a rate of $75 per hour for the work of a

certified third-year law student, as equivalent to the work of a skilled paralegal. The time sheet set forth in detail the work performed by Jones and by the law student.

Neither the declaration nor the time sheet has been submitted to this court on appeal.  On this issue, the Excerpts of Record contain only the declaration of First Card's counsel in opposition to the fee request, which asserts that certain of the entries in McGeorge's time sheet are improper and excessive.  But because Hunt's motion for fees and its supporting papers have not been made a part of the record on appeal, the evidence before us is insufficient for us properly to analyze First Card's contention that the award is excessive.  In sum, the record as it has been presented to this court, simply cannot support a finding that the bankruptcy court abused its discretion in calculating a reasonable fee.  *See Syncom Capital Corp. v. Wade,* 924 F.2d 167, 169 (9th Cir.1991) (holding appellant's contentions unreviewable on appeal because appellant failed to furnish the record and transcript required for meaningful review); *Andersen v. Cumming,* 827 F.2d 1303, 1305 (9th Cir.1987) ("The appealing litigant must ensure that sufficient facts are developed at trial to support a challenge on appeal. The [appellant] must bear the burden of a factual record that is incomplete on the issues it raises.").

Because First Card's conclusory and unsupported allegations are insufficient to show that the bankruptcy court abused its discretion in calculating the fee (subject to the correction made by the BAP), First Card's argument that the fee award was excessive fails.[8]

---

8.  First Card also points out that the fee award is roughly equal in size to the amount in controversy, but cites no authority for the proposition that such an award is eo ipso excessive, and we have found none.  *Cf. City of Riverside v. Rivera,* 477 U.S. 561, 564, 581,

106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (holding that an award of attorney's fees under 42 U.S.C. § 1988 that exceeds the amount of damages recovered is not per se unreasonable).

## IV. CONCLUSION

For the foregoing reasons the decision of the BAP is

**AFFIRMED.**