In re Joseph Lee KING, Debtor.

Linda D. Sparks, Plaintiff,

v.

Joseph Lee King, Defendant.

Bankruptcy No. 00–31628–7.
Adversary No. 00/00092.

United States Bankruptcy Court,
D. Montana.

Feb. 9, 2001.

Linda D. Sparks, in propria persona, Stevensville, MT, for plaintiff.

Gary W. Wolfe, Sol & Wolfe, Missoula, MT, for debtor/defendant.

## *ORDER*

RALPH KIRSCHER, Bankruptcy Judge.

In this adversary proceeding the Plaintiff Linda D. Sparks ("Sparks"), former landlord of the Defendant/Debtor Joseph Lee King ("King"), seeks exception from King's discharge of her claims for rent and damage done to Sparks' real property while King was her tenant. Sparks filed her complaint and appeared at trial *in propria persona.* Her complaint seeks exception from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). King's answer denies the Plaintiff's allegations and requests attorney's fees and costs pursuant to 11 U.S.C. § 523(d) on the grounds Sparks' actions were not substantially justified. For the reasons set forth below, Judgment will be entered for King dismissing Sparks' complaint, but denying King's claim for attorney's fees and costs.

After due notice, trial of this cause was held at Missoula on December 14, 2000. Sparks appeared and testified. King appeared and testified, represented by attorney Gary W. Wolfe ("Wolfe"). Lester Smith ("Smith"), who did some minor repair work for Sparks on the premises Kings rented, also testified. Plaintiff's Exhibits ("Ex.") 1, 4, 8, 9, 13, 14, 15, 17, 25 through 59[1], 104, 105, 107, and 111 were

---

1. Ex. 23 through 59 consist of photographs which were admitted into evidence only after Sparks cut away hearsay statements which she had written on them.

admitted into evidence. At the close of the Plaintiff's case-in-chief Wolfe moved for a directed verdict, which the Court denied. After King concluded his case-in-chief the Court took the matter under advisement. After review of the record and the applicable law, this matter is ready for decision.

This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding to determine dischargeability of a particular debt pursuant to § 157(b)(2)(1). At issue is whether Sparks has satisfied her burden of proof under either §§ 523(a)(2)(A) or (a)(6). The Court concludes she has not.

## FACTS & PROCEDURAL HISTORY

King and his wife Jennifer rented half of a duplex owned by Sparks[2] beginning on September 21, 1996, at a rent of $450 per month. Ex. 1. Kings lived there with their two children for three years. In addition to the remainder of the first month's rent, Kings paid the property manager, Butch Smith, a $350 security deposit for a total of $500. A "property condition report" was prepared, dated 9/22/96 and signed by both Kings. Ex. 1. The property condition report shows several items throughout the house needed cleaning and/or repair at the time Kings moved in, including drapes, doors, walls, and windows. Window screens needed installation. The bathroom door needed a hole repaired, the utility room door had scars and scratches, and doors in the garage had dents and needed repairs. About the garage wall

Ex. 1 states: "There's a big hole in the sheet rock." These matters were never rectified by the landlord[3].

On February 8, 1998, after Sparks had taken over direct management of the property from Smith, Kings entered into a new lease agreement with Sparks, Ex. 4. Among other things, Kings agreed not to perform major vehicle repairs on the premises. In fact, King admitted performing some engine work/vehicle repair on the driveway and in the garage when necessary. He admits leaving oil and grease stains on the floor and driveway. Ex. 23–33.

Kings failed to pay the rent on time as required under Ex. 4. Sparks testified that Mrs. King guaranteed her that Kings would make up late rent, and as a result Sparks gave them until May of 1999 to pay, but they did not. On May 13, 1999, Sparks sent Kings Ex. 8, a notice of cancellation and request to vacate the premises, effective June 15, 1999. Ex. 8 states the amount of rent due, plus late charges and fees and an unpaid water/sewer bill. On May 28, 1999, Sparks sent Kings Ex. 9, a letter asking for a meeting to discuss the unpaid rent and utilities, and discussing complaints she received about loud fighting on the premises, trash and cleaning which would need to be performed in order to refund Kings' security deposit.

King admitted being angry and quarreling with his wife when he received Ex. 8, but testified that their arguments were "completely normal"[4]. Additional holes

---

**2.** Sparks testified she owns a life estate in the property, a duplex located at 223 Barbara Street in Stevensville, Ravalli County, Montana.

**3.** Ex. 17 is an inspection report for annual inspections conducted 9–3–98 and 2–26–99. Ex. 10 is an inspection report dated 6/16/99. The holes and dents in the bathroom and garage doors and garage wall were still present on those dates.

**4.** The record suggests that King was, to a great extent, kept in the dark by his spouse Jennifer regarding the status of their rental

agreement with Sparks. He testified that as far as he knew he owed Sparks only $300 when his spouse informed him they were being evicted. He signed Ex. 111, Jennifer's response to the justice court in which she alleged Sparks' failure to fulfill her promises to clean and repair and reimburse Kings for repairs they did. King was not fully aware of Jennifer's statements in Ex. 111 when he signed it. Jennifer's statement about the lack of window screens on the premises in Ex. 111 is incorrect, but other allegations about the landlord's failure to make repairs is sup-

were made in the walls. King testified that Jennifer, not he, caused the holes in the wall and that he tried to patch them. On rebuttal Sparks testified that Jennifer telephoned her on September 13, 1999, and said that King put his fist through the walls. Jennifer did not appear and testify under oath subject to cross examination.

Jennifer took the kids to California and left King alone to vacate the premises[5]. He met with Sparks on or about June 3, 1999[6], to discuss the overdue rent and cleaning. King told Sparks that he would pay her before they moved out. Sparks gave King an extra week to perform the clean up and repairs, but he did not complete the clean up. Neither did he pay Sparks the overdue rent. King testified that he did not pay Sparks the overdue rent before he left because he was trying to find another place to live for his family, and that he "needed every dime." He tried to save money while Jennifer and the kids were in California. He testified that he ran out of time to complete the cleaning.

On the date King left the premises he left it uncleaned. Sparks went onto the premises and took numerous photographs of the premises on or about June 24, 1999. Ex. 23 through 59. Sparks hired Smith to make repairs on the front door. Smith testified that he viewed the premises, that the front door had been kicked in, and the door jamb had to be replaced. There were holes in the wall, and a radiator had been broken off.

Sparks' photographs, Ex. 23 through 59, show that Kings had failed to empty the premises of various items of personal property. There was trash and unclaimed items throughout the premises. There was grease on the doors, bathroom fixtures and kitchen appliances were left un-

cleaned, there was an uncleaned oil spill on the driveway and grease and stains on the garage floor. Trash was left in the backyard, throughout the house and in the garage. There were deep stains in the carpet, marks on the walls, and the woodstove was left uncleaned.

Sparks sent King Ex. 14, an account of damages, unpaid rent and late charges dated July 14, 1999, itemizing unpaid rent and reimbursement for cleaning and repairs totaling $1,769.58, which Sparks more than trebled to a demand for payment in the sum of $6,285.34, and informing King that she could initiate court action. King did not pay, and Sparks initiated two lawsuits against Kings in the Justice Court of Ravalli County, Case Nos. 1 CV99–337 and 2CV99–401, which the justice court consolidated. Kings filed an answer on October 25, 1999, alleging that the property was in need of cleaning when they moved in and that Sparks fabricated receipts for services and supplies. Ex. 104. Kings did not appear at trial held in the consolidated cases on February 3, 2000. The justice court heard Sparks testify and considered her exhibits, then entered judgment against Kings in the sum of $3,507.35, dated February 10, 2000. Ex. 107. The court denied Sparks' request for treble damages.

Sparks proceeded with execution of her judgment against King, garnishing his wages. King testified that her garnishment of more than $800 from his wages is why he filed his bankruptcy. King filed his Chapter 7 petition on June 28, 2000, and filed his Statements and Schedules on July 12, 2000, listing assets totaling $4,364.00 and liabilities totaling $16,074.00. The Trustee filed a no-asset report on August 23, 2000.

ported by the property condition reports, Ex. 1, 10 and 17.

5. King's Statement of Financial Affairs states that his marriage to Jennifer was dissolved during June of 2000.

6. King disputes the exact date, but admitted they met.

Sparks filed the only Proof of Claim on file in this case on October 3, 2000, asserting an unsecured nonpriority claim in the amount of $2,926.74. Also on October 3, 2000, Sparks filed her adversary complaint in this case, asserting claims for exception from Debtor's discharge pursuant to §§ 523(a)(2)(A) and (a)(6) for King's "deliberate" damage to the rental property; his "false pretense and representation of his financial status in his guarantee to make payment on unpaid rent" and withholding rent "out of spite for receiving the Notice to Vacate"; and false representation of the status of the water/sewer bill with the city of Stevensville.

A Discharge of Debtor was entered on October 12, 2000 [7]. King filed his answer and claim for attorney's fees and costs on November 3, 2000.

## DISCUSSION

In a non-dischargeability claim the burden of proof falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) ("we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *In re Branam,* 226 B.R. 45, 52 (9th Cir. BAP 1998), *aff'd,* 205 F.3d 1350 (9th Cir.1999). A creditor's burden, in conjunction with the "fresh start" policy of the Bankruptcy Code, creates a sizeable obstacle for creditors to overcome in order to prevail on a non-dischargeability complaint. *In re Ballew,* 18 Mont.B.R. 404, 410–11 (Bankr. Mont.2000). As the Ninth Circuit Court of appeals stated:

One of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts. *In re Devers,* 759 F.2d 751, 754–55 (9th Cir.1985). In order to effectuate the fresh start policy, exceptions

7. The Discharge was entered before Sparks filed her return of Summons in this adversary

to discharge should be strictly construed against an objecting creditor and in favor of the debtor. *In re Klapp,* 706 F.2d 998, 999 (9th Cir.1983).

*Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992); *see also, In re Kidd,* 219 B.R. 278, 282, 16 Mont.B.R. 382, 386 (Bankr.Mont.1998).

## I. Collateral Estoppel

At trial the Court declined to give collateral estoppel effect to Sparks' default judgment against King entered in the justice court in consolidated Cause Nos. 1CV99–337 and 2CV99–401. As explained by the BAP in *In re Baldwin,* 245 B.R. 131, 134 (9th Cir. BAP 2000):

The doctrine of collateral estoppel, or issue preclusion, is intended to protect parties from multiple lawsuits and the possibility of inconsistent decisions, and to preserve judicial resources. *See Kelly v. Okoye (In re Kelly),* 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd,* 100 F.3d 110 (9th Cir.1996). Collateral estoppel applies in dischargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The burden of proof is on the party seeking to assert collateral estoppel and in order to sustain this burden, "a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly,* 182 B.R. at 258. "Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect." *Id.*

The preclusive effect of a state court judgment in a subsequent federal action is determined by the law of the state in which the judgment was entered. *See Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995).

proceeding on October 18, 2000.

Montana law provides as a general rule "that a default judgment generally carries no collateral estoppel effect" *Burns v. A Cash Construction Lien Bond,* 301 Mont. 304, 8 P.3d 795, 800 (2000); *Lane v. Farmers Union Ins.,* 296 Mont. 267, 279, 989 P.2d 309, 316 (1999) (citations omitted); *see also In re Palmer,* 207 F.3d 566, 568 (9th Cir.2000) (citations omitted) (recognizing "that a default judgment is generally not entitled to collateral estoppel effect because there is no actual litigation of issues"). Under the general rule, Sparks' default judgment carries no collateral estoppel effect, and she has not shown grounds to depart from the general rule.

The Montana test for collateral estoppel is explained in *Lane v. Farmers Union Insurance:*

> Collateral estoppel prevents re-litigation of a particular issue or determinative fact which was actually or necessarily decided in a prior action. *See Boyd v. First Interstate Bank* (1992), 253 Mont. 214, 218, 833 P.2d 149, 151. In [*Aetna Life and Casualty Ins. Co. v. Johnson,* 207 Mont. 409, 413, 673 P.2d 1277, 1279 (1984) ], we adopted a three-part test for determining whether collateral estoppel applied: (1) was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) was there a final judgment on the merits? (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Aetna,* 207 Mont. at 413, 673 P.2d at 1279. We held that "collateral estoppel will bar litigation of an issue in a civil trial that has previously been litigated in a criminal trial when the requirements ... have been met." *Aetna,* 207 Mont. at 414, 673 P.2d at 1280 (emphasis added).

296 Mont. at 279, 989 P.2d at 316.

In addition to the general rule, in the instant case the default judgment obtained by Sparks against King in the justice court is not entitled to collateral estoppel effect under the Montana test with respect to both her claims under §§ 523(a)(2)(A) and (a)(6). Sparks failed her burden of proving that the dischargeability issues under §§ 523(a)(2)(A) and (a)(6) were actually litigated or identical to the issues raised by her in justice court. The record does not show those issues were effectively raised in Sparks' justice court pleadings, or that they were actually litigated in the justice court. *See Lane,* 296 Mont. at 280, 989 P.2d at 315. More fundamentally, Sparks failed to show that the justice court had jurisdiction to hear and decide cases involving core bankruptcy dischargeability proceedings under §§ 523(a)(2)(A) and (a)(6). The default judgment itself references Sparks' claims for unpaid rent and utilities, and for treble damages due to the "purposeful nature of the damages" which the justice court denied. Ex. 107. The default judgment having been entered solely based upon a simple landlord/tenant claim for unpaid rent, utilities, cleaning and damages, this Court declines to apply the doctrine of collateral estoppel to Sparks' dischargeability claims.

## II. Section 523(a)(2)(A)

Sparks' complaint cites § 523(a)(2)(A) and avers fraud by King for falsely representing his ability to pay overdue rent and thereby obtaining an extension of time from Sparks as a result, and for falsely representing the status of the water/sewer bill for which he was contractually responsible. At trial Sparks introduced evidence that King promised to pay the amounts due but failed to pay. However, Sparks' proof fell short of satisfying the elements for exception from discharge under § 523(a)(2)(A).

To establish non-dischargeability as a result of fraud under § 523(a)(2)(A) [8],

---

8.  11 U.S.C. § 523(a)(2)(A) reads:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

does not discharge an individual debtor from any debt—
\*\*\*

courts in the Ninth Circuit employ the following five-part test:

(1) the debtor made ... representations;

(2) the debtor knew were false when made;

(3) the debtor made the representations with the intention and purpose of deceiving the creditor;

(4) the creditor relied on such representations; and

(5) the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir.1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996); *Ballew*, 18 Mont.B.R. at 412–13. This Court explained in *Ballew*:

The determination of non-dischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of the § 523(a)(2)(A) test mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the Restatement (Second) of Torts (1976) §§ 525–557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443–44, 133 L.Ed.2d 351 (1995) ("'false pretenses, a false representation, or actual fraud,' ... are common-law terms, and ... in the case of 'actual fraud,' ... they imply elements that the common law has defined them to include.").

### 1. Intent to Deceive

With regard to elements (1), (2) and (3)—which, when taken together, establish the element of intent to deceive—a creditor must establish, by a preponder-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

ance of the evidence, that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor. Since direct proof of intent to deceive is nearly impossible to obtain, the element of intent may be inferred from proof of surrounding circumstances "if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082 (9th Cir.1996)

*Ballew*, 18 Mont.B.R. at 413–14.

The burden is even heavier where, as here, no intermediary exists like in transactions between a credit card holder and a credit card company. *In re Slyman*, 234 F.3d 1081, 1086 (9th Cir.2000). In such cases the creditor must prove the elements of misrepresentation and reliance by direct evidence. *Id.* Under either standard Sparks failed to satisfy her burden of showing by a preponderance of the evidence that King knowingly made false representations, with the intent of deceiving her. Her pleadings and arguments are not proof. While the evidence shows that King told Sparks he would pay her what he owed her, and that he was responsible for the water/sewer bill, Sparks failed to offer any evidence that King knew such statements were false, or that he made the representations with the intention and purpose of deceiving her.

The "weighty" burden of proof is on Sparks. *Grogan v. Garner*, 498 U.S. at 291, 111 S.Ct. at 661, *In re Kidd*, 219 B.R. at 282, 16 Mont.B.R. at 386. A debtor's simple failure to perform according to the terms of an ordinary residential lease, without more, constitutes a breach of contract but does not satisfy the creditor's weighty burden under § 523(a)(2)(A). Sparks failed to produce direct evidence of fraudulent intent by King in any of his

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

representations, and the facts and circumstances of this particular case do not present a picture of deceptive conduct by King sufficient to support an inference of fraudulent intent. *Ballew,* 18 Mont.B.R. at 413–14.

The evidence shows nothing more than a debtor telling a landlord that he will pay overdue rent and bills in the midst of financial difficulties and a troubled, crumbling marriage. Sparks failed to offer any evidence that King knew his statements to her were false when he made them, or that he made them with fraudulent intent. For all this record shows, it is at least as likely as not that King intended to pay the overdue rent and utilities at the time he told Sparks he would. There is also evidence suggesting that King did not know the true state of his accounts because his spouse handled such matters. That being the case and the Plaintiff having the burden of proof, the Debtor is entitled to the benefit of the doubt. The Court concludes that Sparks failed to satisfy her burden of proof by a preponderance of the evidence. Sparks' § 523(a)(2)(A) claim will be dismissed.

### III. 11 U.S.C. § 523(a)(6).

█ Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The injury itself must be deliberate or intentional, "not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). *In re Bailey,* 197 F.3d 997, 1000 (9th Cir.1999); *see also In re Baldwin,* 245 B.R. 131, 135–36 (9th Cir. BAP 2000); *In re Branam,* 226 B.R. at 52; *In re Munson,* 18 Mont.B.R. 378, 382 n. 2 (Bankr.Mont.2000); *Kidd,* 16 Mont.B.R. at 390.

█ In the Ninth Circuit, § 523(a)(6) generally applies to torts rather than to contracts, and an intentional breach of contract will not give rise to a nondischargeable debt. *In re Jercich,* 238 F.3d 1202, 1204–06 (9th Cir.2001). In the instant case, Sparks failed to show that King's failure to pay rent and utilities according to the residential lease was intentional rather than a simple failure to perform or inability to pay. Under the general rule then, his failure to pay does not give rise to a nondischargeable debt. *Id.* Further, she failed to show that King's failure to clean the premises and repair the damage was both willful and malicious as required under § 523(a)(6). *In re Jercich,* 238 F.3d at 1204–09.

█ King admitted that certain damage occurred on the premises caused by his negligence, and that he failed to clean the premises. However, as this Court observed in *Kidd,* the § 523(a)(6) exception to discharge does not encompass negligent or even reckless acts:

> In *Kawaauhau,* the petitioners sought to have their medical malpractice award against the debtor/doctor declared nondischargeable under § 523(a)(6). In that case, the Supreme Court held that the § 523(a)(6) "willful and malicious injury" exception to discharge is limited to intentional torts and does not encompass mere negligent or reckless acts. *Kawaauhau,* 523 U.S. at 61, 118 S.Ct. 974 ("[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."). Thus, the petitioners' medical malpractice claim was dischargeable under § 523(a)(6) despite the fact that the debtor/doctor intentionally rendered inadequate medical care.

*Kidd,* 219 B.R. at 284, 16 Mont.B.R. at 390; *see also Jercich,* 238 F.3d at 1206–07 (citing *Kawaauhau,* 523 U.S. at 64, 118 S.Ct. 974). Later in *Kidd,* the Court explained that "a creditor, to prevail under § 523(a)(6), must demonstrate by a preponderance of the evidence, that the debtor desired to cause the injury complained

of, or that the debtor believed that the consequences were substantially certain to result from the debtor[']s acts." *Kidd*, 219 B.R. at 285, 16 Mont.B.R. at 392. Under this test the Court finds Sparks completely failed her burden of proof.

■ There is conflicting evidence regarding the exact source of the various damage to the premises. Sparks contends King caused the damage, but presented no credible proof. Sparks' own Ex. 1 shows that damage existed to doors and garage walls when Kings moved in. King testified that his spouse caused the additional holes in the walls, and that he tried to patch them. He testified that his children damaged and soiled the entrance door. He admitted that $1,300 worth of damage done and cleaning required for the premises was caused by negligence, but that he ran out of time to clean the premises up before Sparks took over possession. Having observed King's demeanor while testifying under oath and cross examination, the Court finds that he is a credible witness[9]. *In re Taylor*, 514 F.2d 1370, 1373–74 (9th Cir.1975); *See also, Casey v. Kasal*, 223 B.R. 879, 886 (E.D.Pa.1998).

Sparks offered no evidence to controvert King's testimony of the source of the damages other than the hearsay statement of King's spouse, Jennifer. Sparks testified that Jennifer telephoned her on September 13, 1999, and said that King put his fist through the walls. The Court assigns little probative weight to this hearsay. When a witness testifies to a statement made by someone else who perceived an event, none of the traditional devices to ensure accuracy and expose inaccuracy are present such as the oath, personal presence of the declarant at trial, or cross examination. *See* 5 Joseph M. McGlaughlin, *Weinstein's Federal Evidence*, § 802.02[2] & [3] (2nd ed.). Here, Sparks' only evidence that King rather than Jennifer caused the holes in the wall is the hearsay statements of Jennifer. But Sparks failed to produce Jennifer at trial to testify and be subject to cross examination under oath, and such hearsay is suspect. In addition, the record shows that Jennifer took the kids and left King for California prior to her alleged phone call to Sparks, after what Sparks' own testimony and exhibits described as heated, lengthy and even violent quarrels. At the time the hearsay phone call was made to Sparks, Jennifer was a co-defendant with King in Sparks' lawsuit in justice court. Kings' marriage is now dissolved. Finally, Sparks impeached Jennifer by pointing out her mistaken statement about window screens on Ex. 111, which King admitted. In the Court's view, these factors render Jennifer's already dubious hearsay statements of little probative weight. Sparks failed her burden of showing by a preponderance of the evidence that those holes in the walls which were not already present when Kings moved in were caused by King.

Moreover, even if they were caused by King the new holes in the walls are distinguishable from the intentional battery described in *In re Baldwin*. There the debtor committed a battery against the party who later brought a § 523(a)(6) action. 245 B.R. at 133, 137. By contrast, King's action striking the wall were, if true, at most actions directed at and in the course of his quarrel with his spouse, not willful and malicious injury directed at Sparks.

The Ninth Circuit requires both willfulness and maliciousness for a § 523(a)(6) exception from discharge. *Jercich*, 238

---

9. This finding is tempered by King's signing Ex. 111, his wife's account of Sparks' broken promises. Jennifer's account contains a mistake about the presence of window screens on the premises, but other statements are corroborated by Sparks' Ex. 1 and 7. The mistake is Jennifer's, and although King signed Ex. 111, his bare signature does not assert the truthfulness or accuracy of the statements contained therein. He testified he was not aware of all its contents when he signed it. He admitted that the screens were in the garage. With King's admissions and ignorance of Ex. 111's contents, Jennifer's statements on Ex. 111 do not go far in impeaching King's credibility on the factual matters to which he testified.

F.3d at 1208. The Ninth Circuit held: "[U]nder *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." There is no evidence whatsoever that any of the damage which Sparks complains of was caused with the intention of injuring Sparks. *Kawaauhau,* 523 U.S. at 61–62, 118 S.Ct. 974; *In re Banks,* 225 B.R. 738, 747 (Bankr.C.D.Cal.1998), *aff'd* 246 B.R. 452 (9th Cir. BAP 1999). The only quarrels or heated disputes in the record were between King and his wife, not between Kings and Sparks. Sparks own evidence suggests that the holes in the walls occurred during a quarrel between the Kings. This is not evidence that the Debtor had a subjective motive to injure Sparks or that King believed that injury to Sparks was substantially certain to occur as a result of his conduct. *In re Banks,* 225 B.R. at 747; *Compare In re Branam,* 226 B.R. at 47, 53 (battery committed upon the plaintiff during an altercation satisfied the willful and malicious elements components of § 523(a)(6)); *Baldwin,* 245 B.R. at 133, 137. Sparks has not shown that King, rather than Jennifer, caused the additional holes in the wall. If he did, the only evidence is they took place during a quarrel by the Kings, and Ex. 1 shows Kings put down a $350 security deposit. The Court concludes Sparks failed to satisfy the willful component of § 523(a)(6).

■ Next, a "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich,* 2000 WL 33122833 at *5; *In re Bailey,* 197 F.3d at 1000. Sparks failed her burden of showing by a preponderance of the evidence any intentional, wrongful acts against her or her property by King. King admits he failed to pay Sparks as he promised, and failed to clean the premises, and that $1,300 worth of damage was done to the property as a result of his negligence, but that does not establish a § 523(a)(6) claim. *Kidd,* 16 Mont.B.R. at 390; *see also Jercich,* 2000 WL 33122833, *3 (citing *Kawaauhau,* 523 U.S. at 64, 118 S.Ct. 974). She failed to show King caused additional holes in the wall, or that he failed to clean the premises intentionally to cause King injury and without just cause or excuse. The Supreme Court specified that the modification of "injury" with the word "willful" in (a)(6) indicates that nondischargeability requires a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. 523 U.S. at 61–62, 118 S.Ct. 974. King may have intended the act of punching the wall, but there is no showing that he intended to injure Sparks. He admits that his actions were negligent or even reckless, but negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious. *Geiger,* 523 U.S. at 63–64, 118 S.Ct. 974, *quoting Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (emphasis in original).

King testified he ran out of time to complete the cleaning, but King set the deadlines to vacate and was protected by a security deposit. Sparks has shown only that her claims against King arise from breach of an ordinary residential lease. The justice court, in entering the judgment against King in Sparks' consolidated actions brought in that court, specifically denied Sparks' request for treble damages. Based upon the above, the Court applies the general rule that Sparks' breach of contract claims do not give rise to a nondischargeable debt. *Jercich,* 238 F.3d at 1204–06.

## IV. Section 523(d)

King requests an award of fees and costs pursuant to 11 U.S.C. § 523(d) which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and

such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

"The purpose of § 523(d) is to deter creditors from bringing frivolous challenges to the discharge of consumer debts. See S.Rep. No. 98–65, at 9–10 (1983)." *In re Hunt*, 238 F.3d 1098, 1103–04 (9th Cir. 2001).

King requests an award pursuant to § 523(d) of "all attorney's fees and costs necessarily incurred in defending this action." Answer, p. 2. However, § 523(d) is limited by its plain language to dischargeability claims brought under subsection (a)(2) of that section. § 523(d). In this adversary proceeding and trial Sparks' emphasis was on § 523(a)(6), not (a)(2). Thus, the lion's share of fees and costs incurred in defending against Sparks' primary claim is not subject to an award under § 523(d), and the Court has no means of allocating Wolfe's fees and costs between the subjection.

On the merits under § 523(d), the creditor bears the burden of proving that its position is substantially justified. *Hunt*, 238 F.3d at 1102–03; *In re Carolan*, 204 B.R. 980, 987 (9th Cir. BAP 1996). To avoid a fee award, Sparks must show that her challenge had a reasonable basis both in law and in fact. *Id. (quoting,* S.Rep. No. 98–65, at 59); *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (interpreting the "substantially justified" standard under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)).

The Court is mindful that Sparks proceeded in this case *in propria persona.* In support of her § 523(a)(2)(A) claim Sparks submitted exhibits and King's admissions that he told her that he would pay her the rent and utility bills by the time he vacated, but did not. While Sparks failed to satisfy her burden of proof by a preponderance of the evidence, this Court finds that her (a)(2) claim was substantially justified.

Fees and costs may also be denied "if special circumstances would make the award unjust." § 523(d). There is little case law interpreting the "special circumstances" language in § 523(d), but what exists suggests that the clause "should be interpreted with reference to traditional equitable principles." *Hunt*, 238 F.3d at 1104 (*quoting In re Hingson*, 954 F.2d 428, 429–30 (7th Cir.1992)).

If Sparks had been represented by an attorney, the result in this case could well have been different if competent counsel had addressed the complex issues of fraudulent intent required under § 523(a)(2). That Sparks' efforts fell short does not change the fact of the Debtor's admissions that he made the statements he would pay, and thereby obtained an extension of time to vacate. This case does not involve the typical challenges to dischargeability brought by a sophisticated credit card lender which § 523(d) is meant to deter. *Hunt*, 238 F.3d at 1103–04. Therefore, based upon these circumstances together with Sparks' emphasis on § 523(a)(6), for which § 523(d) does not apply, this Court exercises its discretion and denies King's request for fees and costs under § 523(d).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine dischargeability of particular debts under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

3. The Plaintiff failed to satisfy her burden of proof under §§ 523(a)(2)(A) or (a)(6) by a preponderance of the evidence.

4. The record does not show that the position of the Plaintiff/creditor with respect to her § 523(a)(2)(A) claim was not substantially justified, and special circumstances would made an award of fees and costs to the Defendant unjust.

IT IS ORDERED Judgment shall be entered for the Defendant/Debtor Joseph Lee King, and Plaintiff's adversary complaint to determine dischargeability of debt under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) is dismissed, with each party to bear their own fees and costs.