FILED

MAR 11 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1118-LGTa |
| TEINA MARI LIONETTI, | Bk. No. 8:15-bk-10705-TA |
| Debtor. | Adv. No. 8:15-bk-01257-TA |
| TEINA MARI LIONETTI, | |
| Appellant, | |
| v. | **OPINION** |
| LAW OFFICES OF STEVEN H. MARCUS, | |
| Appellee. | |

Argued and Submitted on January 30, 2020
at Pasadena, California

Filed – March 11, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor Albert, Bankruptcy Judge, Presiding

————

Appearances:     Matthew G. Bouslog of Gibson, Dunn & Crutcher LLP argued for appellant; Shai S. Oved of The Law Offices of Shai Oved argued for appellee.

---

Before: LAFFERTY, GAN, and TAYLOR, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

In 2011 Appellant Teina Lionetti hired Appellee Law Offices of Steven A. Marcus (the "Marcus Firm") to represent her in divorce proceedings. Ms. Lionetti informed the Marcus Firm at the time of hiring that she had limited means. She signed an engagement letter granting the Marcus Firm a charging lien on any recovery in the divorce proceeding. During the Marcus Firm's representation of her, Ms. Lionetti informed the firm she was considering bankruptcy, and she in fact consulted with bankruptcy counsel.

In 2014, the family law court entered a Qualified Domestic Relations Order that awarded Ms. Lionetti her ex-husband's 401(k) worth over $270,000. Those funds were transferred to Ms. Lionetti and deposited into her retirement account. By then, she owed the Marcus Firm approximately $150,000. She terminated the Marcus Firm's representation without paying those fees.

After Ms. Lionetti filed a chapter 7[1] petition in 2015, the Marcus Firm filed a complaint seeking a declaration of nondischargeability of the outstanding fees under § 523(a)(2)(A) and a declaration that its charging lien was valid. The bankruptcy court granted summary judgment for Ms. Lionetti, finding that the charging lien was not valid and that the nondischargeability claim failed as a matter of law. Ms. Lionetti then moved for an award of attorney's fees under § 523(d), which the bankruptcy court denied.

Both orders were appealed to the United States District Court for the District of California ("District Court"). The District Court affirmed the bankruptcy court's grant of summary judgment but remanded the denial of the fee award for the bankruptcy court to apply the correct standard.

On remand, the bankruptcy court again denied the fee award, finding that the Marcus Firm had been substantially justified in pursuing its nondischargeability claim.

We REVERSE.

## FACTUAL BACKGROUND

In early 2011, Ms. Lionetti was referred to the Marcus Firm in connection with her divorce proceeding, and she met with attorney Steven

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Marcus at his office. During that meeting, Ms. Lionetti explained that she had limited income and resources with which to pay the Marcus Firm's legal fees, noting that she was making only $9.25 per hour and working approximately 25 hours per week. Ms. Lionetti also explained that she had outstanding debts that included approximately $50,000 owed to her prior attorney. She told Mr. Marcus that her ex-husband owed her over $150,000 in spousal support, child support, property taxes, health coverage, and other reimbursements. She stated that she believed her ex-husband had funds in a 401(k) account and other assets to which she believed she was entitled.

Mr. Marcus presented Ms. Lionetti with an engagement letter that set out the terms of the Marcus Firm's representation of Ms. Lionetti in her divorce proceeding. The engagement letter purported to grant a charging lien to the Marcus Firm with respect to any recovery in the divorce proceeding. During the same meeting, without leaving the Marcus Firm's offices, and without having the chance to obtain independent legal advice, Ms. Lionetti signed the engagement letter and paid a $10,000 retainer fee, using three separate credit cards.

During the divorce proceeding, Ms. Lionetti advised Mr. Marcus that she was considering bankruptcy, and Mr. Marcus provided her with a referral for bankruptcy counsel. Ms. Lionetti also expressed concern about the mounting legal fees being incurred and the fact that she had not

4

received any material recovery from her ex-husband since the divorce was filed.

In January 2014, the family law court determined that the ex-husband's 401(k) holding $272,278.98 was Ms. Lionetti's sole and separate property. A few months later, the funds from the 401(k) were transferred to Ms. Lionetti and placed into an individual retirement account for her benefit. At that point, Ms. Lionetti owed the Marcus Firm approximately $150,000. A few months later, Ms. Lionetti terminated the Marcus Firm's representation without paying the outstanding fees.

In February 2015, Ms. Lionetti filed a chapter 7 bankruptcy petition. The Marcus Firm timely filed an adversary complaint against her, seeking a declaration that the debt she owed to it was nondischargeable under § 523(a)(2)(A) and that the Marcus Firm held an enforceable charging lien against the 401(k).[2]

In August 2017, Ms. Lionetti moved for summary judgment, which the bankruptcy court granted, dismissing all claims against her. The bankruptcy court concluded that the purported charging lien provided for in the engagement letter was void under Rule 3-300 of the California Rules of Professional Conduct because the Marcus Firm had not provided Ms. Lionetti with a reasonable opportunity to seek the advice of independent counsel regarding the lien. The bankruptcy court also concluded that the

---

[2] The Marcus Firm also sought its fees and costs in prosecuting its claims.

Marcus Firm had failed to provide sufficient evidence to support the nondischargeability claim. Specifically, the court found that the Marcus Firm had failed to provide evidence that Ms. Lionetti did not intend to perform her obligations when she signed the engagement letter. The bankruptcy court noted that, in his deposition, Mr. Marcus had been unable to provide any specific details as to dates or circumstances of other purported misrepresentations. The court also found that the Marcus Firm had failed to show it justifiably relied on Ms. Lionetti's promise to pay because she had informed Mr. Marcus that she had limited income and resources, outstanding debts, and was considering bankruptcy. The Marcus Firm appealed the dismissal to the District Court, which affirmed.

In the meantime, Ms. Lionetti filed a motion seeking an award of $80,000 in attorney's fees under § 523(d). The bankruptcy court denied the motion, finding that it could not determine on the record before it that there was no substantial justification for the nondischargeability action. Ms. Lionetti appealed the denial of her motion to the District Court, which reversed and remanded because it was unclear whether the bankruptcy court had improperly placed the burden on Ms. Lionetti to show that the Marcus Firm's lawsuit lacked substantial justification.

On remand, the bankruptcy court requested briefing and, after a hearing, once again denied the motion for fees. The court concluded that, despite having lost on summary judgment, the Marcus Firm had

demonstrated that it had substantial justification for pursuing the nondischargeability claim. The court stated that the Marcus Firm's factual allegations—that Ms. Lionetti allowed the Marcus Firm to work for years knowing that the fee would never be paid in the end—plausibly fit into the definition of "false pretenses," i.e., a series of events, activities, or communications which, when considered collectively, create a false and misleading set of circumstances that induce the creditor to extend credit to the debtor. The court also noted that the concept of actual fraud has been evolving, citing *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016), in which the Supreme Court held that actual fraud under § 523(a)(2)(A) may include not only false representations but also fraudulent conveyance schemes. The bankruptcy court also found that there were no special circumstances that would make the fee award unjust and that the amount of fees requested, $80,000, was reasonable.

Ms. Lionetti timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in denying Ms. Lionetti's request for attorney's fees under § 523(d).

7

## STANDARD OF REVIEW

We review the bankruptcy court's order granting or denying attorneys' fees under § 523(d) for abuse of discretion. *Heritage Pac. Fin. LLC v. Machuca (In re Machuca)*, 483 B.R. 726, 736 (9th Cir. BAP 2012)(citing *First Card v. Hunt (In re Hunt)*, 238 F.3d 1098, 1101 (9th Cir. 2001)).

Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the relevant law were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

## DISCUSSION

### A.    Legal Standard for § 523(d) Fee Awards

Section 523(d) permits a debtor who successfully defends a nondischargeability action under § 523(a)(2) to recover attorney's fees from the plaintiff creditor under certain circumstances. Specifically, the statute provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for,

the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

To prevail on a motion for attorney's fees under § 523(d), a debtor must prove three elements: (1) the creditor requested a determination of the dischargeability of the debt; (2) the debt is a consumer debt; and (3) the debt was discharged. *Stine v. Flynn (In re Stine)*, 254 B.R. 244, 249 (9th Cir. BAP 2000), *aff'd*, 19 F. App'x 626 (9th Cir. 2001). If the debtor establishes these elements, the burden then shifts to the creditor to prove that its actions were substantially justified. *Id.* The creditor must show that it had substantial justification for the pursuit of the discharge litigation at all stages of the litigation. *Heritage Pac. Fin., LLC v. Montano (In re Montano)*, 501 B.R. 96, 116 (9th Cir. BAP 2013).

The parties do not dispute that Ms. Lionetti established the threshold requirements for entitlement to fees under § 523(d). And the Marcus Firm did not cross-appeal the bankruptcy court's findings that the amount of fees requested was reasonable and that there were no special circumstances that would make an award of fees unjust. Therefore, the sole issue presented in this appeal is whether the Marcus Firm met its burden to show that it was substantially justified in pursuing its § 523(a)(2) claim.

The "substantially justified" standard requires that a claim have a reasonable basis both in law and in fact. *In re Hunt*, 238 F.3d at 1103 (citing

9

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). A "novel but reasonable" legal theory or a legal theory subject to a split of non-binding authority may serve as bases for concluding that a claim is substantially justified. *In re Machuca*, 483 B.R. at 735. But a creditor cannot show substantial justification for pursing a legally plausible § 523(a)(2) claim if it fails to provide evidence to prove an essential element of the claim. *See In re Montano*, 501 B.R. at 117 ("Since the bankruptcy court concluded that Heritage had not proven actual reliance, an essential element to prove for an exception to discharge under 523(a)(2)(B), . . . it follows that Heritage did not show that its position was substantially justified.")

Although the initial conditions set out by § 523(d) are straightforward and direct, i.e., that the debtor has prevailed in an action seeking nondischargeability of a consumer debt under § 523(a)(2), the last condition–the court finding that "the position of the creditor was not substantially justified"–has proven difficult to interpret and apply.

As an initial matter, the language "substantially justified" is not defined in this section, nor anywhere else in the Code. This language emanates from the Equal Access to Justice Act ("EAJA"). *See In re Hunt*, 238 F.3d at 1103 (noting that the standard for a fee award under § 523(d) was modeled on the EAJA, citing legislative history). The "reasonable basis in law and fact" standard articulated by the Supreme Court in the EAJA context has been used by courts applying § 523(d). *See, e.g., In re Machuca*,

483 B.R. at 734. But while these references are helpful, they are not entirely apt–the EAJA is not used regularly in bankruptcy proceedings, nor do most of its non-bankruptcy applications involve actions based on alleged fraud.

Of course, § 523(d) does not come into play unless and until the creditor's challenge to dischargeability has been unsuccessful. And the mere fact of having lost on the nondischargeability claim, even in some instances on a motion for summary judgment, does not require a finding of no substantial justification. *Id.* Rather, the statute requires that the trial court evaluate whether the "position" of the creditor was substantially justified, which strongly suggests that the standard applies to something considerably more amorphous than the ultimate persuasive power of the facts adduced or arguments presented. In other words, an inquiry about substantial justification usually requires a sort of weighing of the creditor's view of the facts or its premises rather than its failure ultimately to prevail.

This task is made more difficult because proving fraud almost always relies, in part, on the use of inferences. *See Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167-68 (9th Cir. BAP 1999) (intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth); *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 66 (9th Cir. BAP 1998) (intent may be inferred from the totality of the circumstances). But while the use of inferences in a fraud action is appropriate to establish an element of the claim that is unlikely to be

11

admitted and is not otherwise subject to objective verification, e.g., the fraudulent intent of the defendant, it is not normally appropriate to use inferences to prove other elements of the claim that are subject to objective verification. Stated differently, while it may be necessary to utilize inferences to establish some elements of a fraud claim, to have "substance," a fraud claim must emanate from some objective facts that would demonstrate a misrepresentation or deceptive act, knowledge of the deception by the defendant, reliance, and harm. The attempt to use inferences (or inferences on inferences) to establish multiple–or all–of the predicates for a fraud claim inappropriately equates a sense of overall inequity with substantial justification.

Requiring at least some objective factual basis for a fraud claim comports with the most fundamental meaning of the phrase "substantially justified" as interpreted by the Supreme Court (i.e., having a reasonable basis in law and fact). But the simpler and more fundamental meaning of "substantially justified," i.e., presenting or offering something of substance, as opposed to surmise, may provide the answer to the inquiry whether a position falls within the standard. It does here.

The Marcus Firm did not offer any objective factual basis for a § 523(a)(2)(A) claim that would have supported a finding that its claim was substantially justified. Rather, it asserts that the "totality of the circumstances" (including the notion that it was unfair for the Marcus Firm

to have accrued substantial fees in successfully representing Ms. Lionetti in her divorce and to go unpaid) shows substantial justification for its claim. This assertion attempts to turn the inquiry concerning "substance" into an exercise in sifting through miasmas of alleged inequities, and is far from the standard of substantial justification that § 523(d) ought to require.

**B.** **The bankruptcy court erred in its application of the "substantially justified" standard.**

To prevail on its nondischargeability claim under § 523(a)(2)(A), the Marcus Firm would have had to prove, by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000). To the extent the Marcus Firm asserted that the fraud at issue was a fraudulent omission, it needed to show that the omitted fact was material and that Ms. Lionetti had a duty to disclose. *See Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323 (9th Cir. 1996). If those elements were proven, the reliance and causation elements would be deemed established without needing to be separately proven. *Id.*

In its complaint, the Marcus Firm appeared to rely solely on a fraud in the inducement theory, i.e., that Ms. Lionetti did not intend to pay the Marcus Firm at the time she signed the engagement letter. Later, in its opposition to Ms. Lionetti's motion for summary judgment, the Marcus Firm posited two alternative theories in support of its nondischargeability claim: (1) a fraudulent conveyance scheme; and (2) fraudulent omissions.

With respect to the fraudulent conveyance theory, the Marcus Firm alleged that after Ms. Lionetti granted the Marcus Firm a charging lien on any recovery from the divorce proceeding, she later sought and received counseling from two bankruptcy attorneys, her accountant, and her son-in-law, an attorney with Gibson, Dunn & Crutcher LLP, the firm that represented her in the nondischargeability proceeding (and now represents her in this appeal).[3] Then, after the family law court awarded the 401(k) to Ms. Lionetti, she refused to endorse the check to the Marcus Firm for payment as promised in the engagement letter and thereafter terminated the firm's services. The Marcus Firm argued that these facts could be interpreted only one way–as evidence that Ms. Lionetti "knew exactly what she was doing and why, and its adverse impact upon Plaintiff's ability to enforce and collect his [sic] fees, all the while continuing to accept the benefit of Plaintiff's services which resulted in the delivery of more than

_____

[3] According to Ms. Lionetti's supplemental declaration in support of her motion for summary judgment, she denied having been counseled by her son-in-law.

14

$272,278.98 into her hands." Although not clearly articulated, the Marcus Firm seemed to argue that the referenced events constituted a transfer scheme designed to hinder the collection of a debt. As for justifiable reliance, the Marcus Firm argued that it relied on Ms. Lionetti's representation in the engagement letter that she intended to pay the amounts due regardless of whether the firm's efforts were successful.

Alternatively, under its fraudulent omission theory, the Marcus Firm argued that Ms. Lionetti fraudulently failed to disclose at the time she signed the engagement letter that she had no intention of authorizing the firm to sign the 401(k) check in payment of its fees if doing so would result in adverse tax consequences to her, and subsequently fraudulently failed to disclose that in 2012 she had consulted with the above-mentioned attorneys.

Supporting its opposition to summary judgment were the declarations of Steven H. Marcus and Louis J. Esbin, counsel for the Marcus Firm. Mr. Marcus testified, in relevant part, that although Ms. Lionetti was billed each month, she never asked the firm to stop its representation and instead "begged" Mr. Marcus to remain as counsel, and "repeatedly assured me that she would pay our fees from the proceeds since there was no other source available to her and she knew that she owed us these funds." For this assertion, Mr. Marcus cited an email from Ms. Lionetti dated January 15, 2013, to her accountant, which included a copy of a

15

proposed email to Mr. Marcus. There was no proof such an email was ever sent to Mr. Marcus, but even if there were, the email itself contains no assurance of payment. In short, Mr. Marcus provided no specifics as to the dates, times, or places of any purported assurances of payment, nor did he cite any other evidence pointing to a fraudulent intent on Ms. Lionetti's part.[4]

As found by the bankruptcy court–and affirmed by the District Court–the Marcus Firm did not proffer any evidence that Ms. Lionetti did not intend to pay the firm when she signed the engagement letter, and, in fact, Ms. Lionetti's payment of the $10,000 retainer negated any inference that she lacked such intent. The District Court also affirmed the bankruptcy court's rejection of the fraudulent conveyance theory as applied to the transfer of the 401(k) funds into Ms. Lionetti's retirement account because the undisputed facts showed that no funds were transferred to a third party.

The Marcus Firm does not dispute these findings, nor could it, given that it did not appeal the District Court's decision. *See In re Machuca*, 483 B.R. at 735-36 (creditor could not attack final judgment on summary

---

[4] In his declaration, Mr. Esbin authenticated various attached documents, including the referenced email and others obtained from Ms. Lionetti in discovery. Those emails corroborate the allegation that Ms. Lionetti sought the advice of bankruptcy counsel in late 2012 or early 2013. Although those emails show that Ms. Lionetti intended to ask bankruptcy counsel about how the Marcus Firm's fees would be treated in bankruptcy, there was no suggestion of any fraudulent scheme or intent.

judgment through a § 523(d) proceeding). Instead, it argues that the totality of the circumstances provided a reasonable factual basis for its pursuit of the nondischargeability claim. But the Marcus Firm points to no evidence that would support a nondischargeability claim under any of the proffered theories.[5] Nor has our review of the record suggested a reasonable factual basis for such a claim.

In its ruling after remand, although the court acknowledged the correct standard–that the plaintiff must show that it had a reasonable legal **and** factual basis for its claim–the bankruptcy court focused almost entirely on whether the Marcus Firm had posited a a reasonable **legal** theory for its claim, i.e., false pretenses or a fraudulent conveyance scheme. The bankruptcy court did not analyze with specificity whether there was any reasonable **factual** basis for the Marcus Firm to believe that it could establish the elements of a § 523(a)(2)(A) claim under those theories. There was no specific evidence of misrepresentation, fraudulent omission, or fraudulent intent before the court, and the court cited no objective evidence that would have supported, either directly or by inference, a false pretenses

---

[5] The Marcus Firm states in its appellate brief that it "incorporates its former briefs on remand as though set forth at length." However, we need not consider arguments not specifically and distinctly made in a party's appellate brief. *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 410 (9th Cir. BAP 2005), *aff'd*, 564 F.3d 1052 (9th Cir. 2009). *See also Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335 (Fed. Cir. 2006) (Under Fed. R. App. P. 28 [which sets forth briefing requirements and is substantively identical to Rule 8014], arguments are not properly raised by incorporating them by reference from a summary judgment memorandum.).

or fraudulent conveyance scheme theory.

Additionally, there was no evidence that would have supported the conclusion that the Marcus Firm justifiably relied on any representations made by Ms. Lionetti. Given that the firm was indisputably aware of Ms. Lionetti's financial circumstances, the only reasonable inference to be drawn from the evidence was that the Marcus Firm relied on its charging lien in continuing to provide legal services.

**C.      There is no policy reason to limit the application of § 523(d) to situations involving consumer finance companies.**

We note finally that the attempt by the Marcus Firm to argue against application of § 523(d) because this case is not a "third party credit card transaction" or a "typical one-sided battle against [a consumer debtor]" lacks merit. As an initial matter, nothing in the statute or the case law indicates that such a limitation on application of § 523(d) was contemplated by Congress or is appropriate. In fact, far from falling outside the intended scope of the statute, this case provides a prime example of the dilemma a consumer debtor confronts when a creditor initiates a nondischargeability action--i.e., the challenge of mounting--and financing--an effective defense on what is typically a fact-intensive, and therefore potentially quite expensive, matter. The Marcus Firm does not dispute that Ms. Lionetti's counsel reasonably incurred the $80,000 sought via the § 523(d) motion in the successful effort to defend against its claim of nondischargeability (and

that the firm actually incurred sums greatly in excess of those sought in the § 523(d) motion throughout this long and contentious matter), or that the firm could not reasonably expect to collect such a fee from Ms. Lionetti. Absent the good fortune of obtaining what would essentially be a pro bono representation, a consumer debtor will typically lack the ability personally to fund such a defense. Thus, the possibility of a § 523(d) award may provide a debtor's only chance for attracting an attorney and obtaining an appropriate and vigorous defense. Moreover, where the creditor asserting nondischargeability is a law firm, the deterrent effect of § 523(d) may be especially important. The potential cost of such litigation, in and of itself, may in many cases cause appropriate restraint by potential plaintiff-creditors. But a law firm can pursue the litigation without significant out of pocket costs. Without the deterrent of § 523(d), a law firm may be much more likely to pursue questionable litigation in an attempt to obtain a settlement in a weak or meritless case.

## CONCLUSION

Although the bankruptcy court identified the correct legal rule in denying Ms. Lionetti's motion for fees, the court did not properly apply that rule, as it identified nothing in the record from which it could have determined that the Marcus Firm had a reasonable factual basis for its nondischargeability claim; it thus abused its discretion in denying the fee motion.

Accordingly, we REVERSE.