**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ELIZABETH ANN RAMSEY,<br>　　　　　　　Debtor. | BAP No.  NV-22-1202-BGC |
| | Bk. No.  21-10230-mkn |
| ELIZABETH ANN RAMSEY,<br>　　　　　　　Appellant,<br>v.<br>EUGENE TUMBARELLO; SHAMROCK<br>PAINTING, INC.,<br>　　　　　　　Appellees. | Adv. No.  21-01039-mkn<br><br>**MEMORANDUM**∗ |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Mike K. Nakagawa, Bankruptcy Judge, Presiding

Before: BRAND, GAN, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Appellant Elizabeth Ramsey appeals an order denying her motion for
attorney's fees and costs under § 523(d)[1] after she prevailed on the § 523(a)(2)
complaint filed by appellees Eugene Tumbarello and Shamrock Painting, Inc.
("Tumbarello"). The bankruptcy court determined that § 523(d) did not apply

---

∗ This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy
Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy
Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

because the debt at issue was not a consumer debt. It also found that Tumbarello's prosecution of the complaint against Ramsey was substantially justified. Because the record supports the bankruptcy court's finding that the complaint was substantially justified, we AFFIRM.

## FACTS

**A.    Events leading to the § 523(a)(2)(A) complaint**

Ramsey is (or was) engaged to Gregg Chambers. Chambers works as a handyman and occasionally flips houses. Tumbarello is a real estate investor and lives in Colorado.

A real estate agent known to Chambers and Tumbarello represented Tumbarello in negotiating separate transactions to renovate and sell two adjacent residential properties in Las Vegas known as the 1207 Property and the 1201 Property. The transactions were memorialized in two agreements known as the 1207 Contract and the 1201 Contract.

The 1207 Contract, dated October 20, 2016, was a one-page document regarding the 1207 Property, which Ramsey had purchased three weeks prior. The 1207 Contract identified Ramsey as the "Owner" of the 1207 Property and Chambers as the "Owner/Contractor." It provided that Tumbarello would contribute $50,000 for the estimated renovation costs. Once the property sold, Tumbarello would receive 30% of the net proceeds, while Ramsey and Chambers would receive 70%. The 1207 Contract appeared to be signed by Tumbarello, Chambers, and Ramsey.

The 1201 Contract, dated March 3, 2017, is a one-page document

2

regarding the 1201 Property. It identified Ramsey as the "Owner" of the 1201 Property and Chambers as the "Owner/Contractor," although Ramsey did not acquire title to it until one month later. The 1201 Contract provided that Tumbarello would contribute $30,000 for the estimated renovation costs, as well as $78,000 for the down payment to acquire the property. Once the property sold, the parties would share equally in the net proceeds: Tumbarello 50% and Ramsey/Chambers 50%. The 1201 Contract appeared to be signed by Tumbarello, Chambers, and Ramsey.

When the renovation projects were not proceeding as agreed, Tumbarello sued Ramsey and Chambers in the Nevada state court. He alleged, among other things, that he gave Ramsey and Chambers $140,000 towards the projects but they pocketed the funds by claiming false expenses and by returning purchased materials or never installing the materials in the properties. Further, rather than renovating and listing the properties, Ramsey had unilaterally moved into the 1201 Property and was living there rent free.

After Ramsey failed to answer the complaint and unsuccessfully attempted to set aside the default, the parties settled the Nevada action. When Ramsey and Chambers failed to satisfy any of their settlement obligations, Tumbarello obtained a judgment for $221,735.99 and an order allowing him to foreclose on the properties. Ramsey and Chambers's appeal was dismissed for lack of prosecution.

Thereafter, Ramsey conveyed a 50% interest in the 1207 Property to Chambers. Chambers then claimed a homestead exemption for the 1207

3

Property; Ramsey claimed one for the 1201 Property. The state court denied the claimed exemptions, finding that Ramsey and Chambers failed to meet their burden to prove that they were entitled to them under Nevada law.

Tumbarello then acquired both properties through sheriff's sales. One year later, the state court issued Tumbarello a sheriff's deed for the 1207 Property. However, Ramsey redeemed her interest in the 1201 Property within the one-year redemption period.

Once Ramsey redeemed her interest in the 1201 Property, she again sought a homestead exemption for it. The state court again denied the claimed exemption, finding that it "did not apply because an individual using fraudulently obtained funds to purchase real property should not be protected because the exemption's purpose is to provide protection to individuals who file the homestead exemption in good faith[.]"

**B.     Ramsey's chapter 7 filing and the § 523(a)(2)(A) complaint**

Ramsey filed a chapter 7 bankruptcy case on January 19, 2021. Tumbarello objected to Ramsey's claimed homestead exemption for the 1201 Property, where she was still residing, arguing that the state court had denied it twice because Ramsey used fraudulently obtained funds to purchase the property. The bankruptcy court sustained the objection on the basis that the state court had already determined she was not entitled to a homestead exemption for the 1201 Property under Nevada law.

Tumbarello then filed the § 523(a)(2)(A) complaint. He asserted essentially the same allegations as he did in the Nevada action. Ramsey

4

moved to dismiss under Civil Rule 12(b)(6), applicable here by Rule 7012, arguing that the complaint failed to set forth any facts that Tumbarello gave her money or that she had a written agreement with him. The bankruptcy court denied Ramsey's motion to dismiss, ruling that the complaint set forth sufficient factual allegations to state a plausible claim for fraud under § 523(a)(2)(A).

**1.      Trial and ruling on the § 523(a)(2)(A) claim**

At the two-day trial Tumbarello told an entirely different version of what transpired between the parties than Ramsey. Their only area of agreement was that they had never met in person or spoken on the phone. While Tumbarello claimed that he had exchanged an email with Ramsey, the evidence at trial was inconclusive.

Ramsey testified that she never entered into or signed any agreement with Tumbarello to renovate and sell the 1207 Property or the 1201 Property, never sought or received any of the $140,000 Tumbarello claimed to have paid her, and never told Tumbarello that Chambers was her business partner or that he was a licensed contractor. Ramsey testified that she had used her own funds for the down payments for all homes she purchased during that time period. For the 1207 Property, which she bought in September 2016, she used $28,000 from her retirement account. In January 2017, she sold another house and received a profit of $93,000. In March 2017, when she bought the 1201 Property, she used $73,941.18 of the profit from the January 2017 sale.

Tumbarello testified that he, not Ramsey, provided the $78,000 for the

down payment for the 1201 Property. Tumbarello wired $48,000 to Chambers three days prior to the closing.[2] Tumbarello also sent Chambers a check for $30,000, which cleared the bank shortly before the closing. Ramsey testified that she had no knowledge about the $48,000 wired to Chambers or the $30,000 check sent to him or what was done with the funds. Tumbarello admitted that he never provided Ramsey with any money. He maintained, however, that because Ramsey was in a joint venture with Chambers and knew of and consented to his fraud, Chambers's fraudulent conduct could be imputed to her.

The bankruptcy court denied Tumbarello's § 523(a)(2)(A) claim. It found that Ramsey had not signed either the 1207 Contract or the 1201 Contract, and there was no other evidence of a joint venture or similar relationship between Tumbarello and Ramsey, or between Ramsey and Chambers, that encompassed Chambers's alleged conduct. Consequently, Tumbarello had failed to demonstrate that any conduct by Chambers, including any alleged fraudulent conduct, could be imputed to Ramsey. And there was no persuasive evidence of a debt owed by Ramsey to Tumbarello that was traceable to the fraud committed by Chambers, if any. Tumbarello did not

---

[2] Ramsey and Chambers admitted in prior state court declarations that Tumbarello wired $48,000 to Chambers three days before the closing for the 1201 Property and that the money was used for the down payment. At the bankruptcy court trial, however, Ramsey testified that this was incorrect and that she failed to notice this erroneous statement in the declaration because she signed it in haste. The bankruptcy court found her testimony credible. The real estate agent involved testified that it was possible the $78,000 forwarded by Tumbarello to Chambers was used for renovations to the 1201 Property instead of for the down payment to buy it.

appeal the bankruptcy court's decision.

**2.    Ramsey's § 523(d) motion and the bankruptcy court's ruling**

After prevailing on Tumbarello's § 523(a)(2)(A) complaint, Ramsey moved under § 523(d) for attorney's fees and costs of $48,782. She argued that the debt incurred was a "consumer debt" since Tumbarello never gave her any money and no contract was formed between the parties. Ramsey argued that the court had to look to her purpose for the debt, which was to purchase homes and live in them. Ramsey claimed that she initially intended to live in the 1207 Property, but because it needed significant repairs, she purchased the 1201 Property, moved in, and continued to live there.

Ramsey also argued that Tumbarello's complaint was not substantially justified. She argued that Tumbarello knew he had never provided any funds to her, knew the state court orders and judgment were not based upon a trial or any evidence, knew she committed no fraud, and knew that her inability to comply with the settlement agreement did not equate to fraud. In addition, argued Ramsey, the bankruptcy court found that Tumbarello produced no direct evidence connecting her to any money given, paid, or loaned, and that he provided no evidence of an agreement with her or that he relied upon any representation by her.

Tumbarello opposed the motion, arguing that the debt incurred by Ramsey was for a business purpose. Tumbarello argued that Ramsey was trying to shoehorn a business debt into a consumer debt simply because she bought two houses and remodeled them. However, that was not the purpose

7

of the parties' transactions; it was a commercial agreement to remodel and sell the two properties for profit.

Tumbarello further argued that the complaint was substantially justified. First, Ramsey agreed to settle the Nevada action. When she failed to fulfill her settlement obligations, Tumbarello obtained a judgment that constituted a deed of trust against both properties and allowed him to foreclose. Ramsey then sought a homestead exemption for the 1201 Property both before the foreclosure sale and after she redeemed her interest, but the state court denied relief each time because she had used fraudulently obtained funds to purchase the property. Although the bankruptcy court found that the state court made no fraud findings in denying the homestead exemption for purposes of § 523(a)(2)(A), Tumbarello argued that there were still two state court orders ruling that Ramsey used fraudulently obtained money to buy the 1201 Property.

The bankruptcy court denied Ramsey's motion for attorney's fees and costs. As a threshold matter, the court determined that § 523(d) did not apply because the debt was not a consumer debt. In addition, the court found that Tumbarello's assertion of the § 523(a)(2)(A) claim was substantially justified. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

////

**ISSUE**

Did the bankruptcy court abuse its discretion in denying Ramsey's motion for attorney's fees and costs under § 523(d)?

**STANDARDS OF REVIEW**

We review the bankruptcy court's decision regarding an award of attorney's fees and costs under § 523(d) for an abuse of discretion. *Lionetti v. Law Offices of Steven H. Marcus (In re Lionetti)*, 613 B.R. 13, 18 (9th Cir. BAP 2020). The bankruptcy court's finding of whether the creditor's prosecution of its § 523(a)(2) complaint was substantially justified is reviewed for clear error. *See Stine v. Flynn (In re Stine)*, 254 B.R. 244, 251 (9th Cir. BAP 2000), *aff'd*, 19 F. App'x 626 (9th Cir. 2001).

A bankruptcy court abuses its discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011); *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

Under certain circumstances, § 523(d) permits a debtor to recover attorney's fees and costs from the plaintiff when the debtor successfully defends a nondischargeability action under § 523(a)(2). Specifically, § 523(d) provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

To prevail on a motion under § 523(d), "a debtor must prove three elements: (1) the creditor requested a determination of the dischargeability of the debt under § 523(a)(2); (2) the debt is a consumer debt; and (3) the debt was discharged." *In re Lionetti,* 613 B.R. at 18 (citing *In re Stine,* 254 B.R. at 249).

Once the debtor establishes these elements, the burden shifts to the creditor to demonstrate that its position was substantially justified. *Id.* (citing *In re Stine,* 254 B.R. at 249). "The creditor must show that it had substantial justification for the pursuit of the discharge litigation at all stages of the litigation." *Id.* at 18-19 (citing *Heritage Pac. Fin., LLC v. Montano (In re Montano),* 501 B.R. 96, 116 (9th Cir. BAP 2013)).

The bankruptcy court found that § 523(d) did not apply because the alleged debt was not a consumer debt. Ramsey argues that the bankruptcy court erred by looking to Tumbarello's complaint and allegations that the debt incurred was for a business purpose, when the debt she incurred was for the purpose of buying and renovating a home to live in, which is a consumer debt. We need not decide this issue, because even if the relevant debt was a consumer debt, Tumbarello's prosecution of the § 523(a)(2)(A) complaint was substantially justified.

10

A creditor is "substantially justified" in bringing a § 523(a)(2) claim if the claim has a "reasonable basis both in law and in fact." *First Card v. Hunt (In re Hunt),* 238 F.3d 1098, 1103 (9th Cir. 2001). "[T]here is no presumption that the creditor was not substantially justified simply because it did not prevail." *In re Stine,* 254 B.R. at 250 (citation omitted).

The bankruptcy court found that Tumbarello was substantially justified in bringing his § 523(a)(2)(A) claim against Ramsey and that his pursuit of the claim was substantially justified at all stages of the litigation.[3] First, the court noted that it had denied Ramsey's motion to dismiss under Civil Rule 12(b)(6) because Tumbarello had alleged a plausible basis for his claim; Tumbarello simply failed to meet his burden of persuasion at trial. Second, the court noted that neither party sought summary judgment prior to trial.[4] If either side could have demonstrated that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law, they could have filed summary judgment motions to avoid the costs and attorney's fees incurred by going to trial. Finally, the court noted that the Nevada action encompassed the events underlying the § 523(a)(2)(A) claim, but a settlement was reached before evidence and testimony was ever presented at trial. Thus,

---

[3] Precisely, the bankruptcy court found that Ramsey "failed to demonstrate textually, procedurally, or practicably, that the Plaintiffs' assertion of the 523(a)(2) claim was not substantially justified." While the court may have applied an incorrect burden of proof here, which Ramsey raised at oral argument, the record supports a finding that the complaint was substantially justified even with the burden on Tumbarello.

[4] Tumbarello did seek summary judgment but for reasons unknown withdrew the motion.

the existence of a valid written agreement between Tumbarello and Ramsey was not determined until the § 523(a)(2)(A) claim was tried.

Ramsey argues that Tumbarello's admission that he never gave her any money demonstrates that his complaint was not substantially justified. She argues that the bankruptcy court erred by holding that, because the parties had entered into a settlement agreement in the Nevada action, Tumbarello's complaint was substantially justified. While this mischaracterizes the court's ruling, the fact Tumbarello never gave Ramsey any money directly does not establish that his assertion of the § 523(a)(2)(A) claim against her was not substantially justified.

Tumbarello sued Ramsey on the theory that she was in a joint venture with Chambers, that she knew of and consented to Chambers's alleged fraud, and that Chambers's fraudulent conduct could be imputed to her. Tumbarello had further reason to believe that all three of them were in a joint venture together based on the contracts, which he thought Ramsey signed, and because Ramsey admitted to their business relationship and the monies received in a declaration she filed in the Nevada action. That she failed to review the erroneous declaration before signing it because she was in a hurry was not something Tumbarello would or should have assumed.

Ramsey suggests that Tumbarello failed to investigate the validity of his § 523(a)(2)(A) claim before filing it, which also supports a finding that it was not substantially justified. Contrary to Ramsey's assertion, Tumbarello conducted two judgment debtor examinations of Ramsey before filing the

12

complaint, but Ramsey did not include the transcripts as part of the record on appeal though they were admitted at trial. Without the transcripts, we have no way of knowing whether Tumbarello learned of any facts that would have demonstrated that the § 523(a)(2)(A) claim lacked a basis in law or fact.

Because there was a reasonable basis both in law and in fact that Tumbarello had a § 523(a)(2)(A) claim against Ramsey, the bankruptcy court did not clearly err in finding that his prosecution of the complaint was substantially justified.

## CONCLUSION

For the reasons stated above, we AFFIRM.